## UNITED STATES v. ANDOLSCHEK et al.
### No. 27.

Circuit Court of Appeals, Second Circuit.
April 24, 1944.

504

Thomas A. McDonald, of New York City, for Andolschek.

Harold St. L. O'Dougherty, of Brooklyn, N. Y., for Ward.

Warren J. Heeg, of Forest Hills, N. Y., for Nagle.

J. Bertram Wegman, of New York City, for Herskowitz.

Vine H. Smith and Harold M. Kennedy, U. S. Atty., both of Brooklyn, N. Y. (James G. Scileppi, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

■■ These appeals are from a judgment of conviction for conspiracy to violate § 4047(e) of 26 U.S.C.A. Int.Rev.Code. The accused were inspectors of the "Alcohol Tax Unit," and were indicted along with eighteen other inspectors or investigators. Four pleaded guilty; as to three the indictment was severed; nine, including the four appellants were found guilty; six were acquitted. Five of the nine found guilty did not appeal. The four who did, and whose appeals are now before us, all complain that the evidence was not so convincing that it should have satisfied the jury of their guilt beyond a reasonable doubt. This objection we may dispose of in limine, for, as we said in United States v. Feinberg, 2 Cir., 140 F.2d 592, 594: "The standard of evidence necessary to send a case to the jury is the same in both civil and criminal cases; and * * * given evidence from which a reasonable person

might conclude that the charge in an indictment was proved, the court will look no further, the jury must decide, and the accused must be content with the instruction that before finding him guilty they must exclude all reasonable doubt." We will not "distinguish between the evidence which should satisfy reasonable men, and the evidence which should satisfy reasonable men beyond a reasonable doubt." The accused at bar do not argue that the evidence was not strong enough to support a verdict in a civil case, and it certainly was; that being true, our review ends.

Upon Andolschek's appeal the only point we need consider is his immunity under § 3119 of 26 U.S.C.A. Int.Rev.Code, which he claimed by a plea in bar, filed and overruled before trial. This plea alleged that he had been subpoenaed to appear before the grand jury; that in obedience to this subpoena he did appear; and that he "testified freely with reference to the subject matter of inquiry by said Grand Jury as shown by the indictment herein." By its reply the prosecution admitted all the allegations of the plea, except that it took the position that Andolschek had "waived" his privilege by testifying without claiming it. Ward, Nagle and Herskowitz raise several points in common. First, they complain of the exclusion of certain official reports made by them to their superiors which narrated their conduct as inspectors in dealing with "permittees." The contents of these reports is not in the record, but both sides assumed at the trial, and have assumed upon this appeal, that they would bear upon how the accused had in general performed their duties, although it does not definitely appear whether they contained anything about those specific transactions as to which the prosecution's witnesses testified. The judge excluded them, not because they were irrelevant, but because he thought their disclosure forbidden under Article 80 of Regulations 12 of the Treasury Department, which we quote in the margin.* Second, Ward, Nagle and Herskowitz complain that separate verdicts as to different defendants were received at different times: that convicting Andolschek and one other, being received at eleven P. M.; that convicting Ward, Nagle and two others and acquitting two, being received at one A. M.; and that convicting Herskowitz and two others and acquitting four, being received at two-fifteen A. M. Third, they complain of the general conduct of the trial: i. e., that the judge constantly hectored counsel, unduly intervened in the examination of witnesses, favored the prosecution while the testimony was going in and in his charge, improperly cut short cross examination, and held the jury to unreasonable hours. Herskowitz separately complains that he was not shown to have been party to the conspiracy laid in the indictment, which was to bribe inspectors and investigators in the "Permissive Section" of the "Alcohol Tax Unit," to which he was not assigned. All the accused also complain that the indictment was duplicitous; but, as that point is frivolous, we shall not discuss it.

Coming first to Andolschek, we think that when he appeared before the grand jury under subpoena and testified, he secured the immunity granted by § 3119 of 26 U.S.C.A. Int.Rev.Code. The judge assumed that a witness who, when subpoenaed, does not claim his privilege against self-crimination, surrenders it, and cannot thereafter invoke an immunity granted him by statute. That ruling was in accord with the law as we then understood it; but since the trial the Supreme Court has decided (United States v. Monia, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376) that a witness under subpoena need not claim his privilege, in order to invoke a statutory immunity, couched in substantially the same language as § 3119. The prosecution answers, first, that in the case at bar the crime with which Andolschek was charged was not that for which § 3119 gave him immunity; and second, that, even if it had been, it does not appear that his testimony related to the crime laid in the indictment. In both respects this argument is wrong. The indictment was, it is true, for a conspiracy to violate § 4047(e) of 26 U.S.C.A. Int.Rev.Code, and not any of those sections (§§ 3100–3124), for which § 3119 grants immunity. Nevertheless, the events laid in the indictment as the sub-

---

* "Whenever a subpoena shall have been served upon them, they will, unless otherwise expressly directed, appear in Court and answer thereto and respectfully decline to produce the records or give testimony called for on the ground of being prohibited therefrom, from the regulations of the Treasury Department. Officers disobeying these instructions will be dismissed from the service and may incur criminal liability."

stance of the conspiracy, were a crime under § 3115(a), as well as under § 4047(e), for § 3115(a) provides, among other things, that "Whoever withdraws * * * tax free any alcohol subject to tax, or whoever otherwise violates any provisions of this part" (§§ 3100–3124) "* * * shall be liable * * * to * * * imprisonment." No doubt, as the prosecution says, this is directed against "permittees"; but when Andolschek allowed "permittees" to withdraw "alcohol subject to tax," which they could not have done without his connivance, he abetted them in violating § 3115(a), and by so doing made himself a principal in their crime. 18 U.S.C.A. § 550. While there may, of course, be conduct which violates § 4047(e) and does not violate § 3115(a), in this instance if the conduct charged violated § 4047(e), it necessarily violated § 3115(a) as well. Andolschek could not be forced to testify to that conduct unless he was immune not only from prosecution under § 3115(a), but under every other statute, § 4047(e) included. Moreover, the plea and reply are a complete answer to the second objection: i. e., that his testimony before the grand jury does not appear to have been connected with the crime charged. The plea alleged and the reply admitted, that he had "testified freely with reference to the subject * * * of inquiry * * * as shown by the indictment," which can only mean that he testified to the conspiracy alleged in the indictment: i. e., to an agreement to accept bribes in consideration of allowing alcohol to be withdrawn tax free. While the judge's ruling was right under those decisions which he was then bound to follow, these having now been shown to have been erroneous, the plea must be sustained and the indictment dismissed.

■ Coming next to the alleged errors common to Ward, Nagle and Herskowitz, the first is the exclusion of the reports of their dealings with "permittees". These reports were presumably competent, since they were made in the course of official duties; and, although we cannot know whether they threw light upon the specific transactions proved at the trial, as we have already said, the point was disposed of on the assumption that their contents might be relevant. If they related to transactions with those "permittees" who were alleged to have bribed the accused, they certainly were relevant; and we think that they would not have been too remote, though they showed only that the accused had in other instances been faithful and assiduous in the discharge of their duties. The propriety of the exclusion must rest therefore upon the ground on which the judge put it: i. e., that the regulation forbade the disclosure. It is true that in Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846, the validity of a similar regulation was upheld; and Stegall v. Thurman, D.C., 175 F. 813, and Ex parte Sackett, 9 Cir., 74 F.2d 922, are to the same effect. However, none of these cases involved the prosecution of a crime consisting of the very matters recorded in the suppressed document, or of matters nearly enough akin to make relevant the matters recorded. That appears to us to be a critical distinction. While we must accept it as lawful for a department of the government to suppress documents, even when they will help determine controversies between third persons, we cannot agree that this should include their suppression in a criminal prosecution, founded upon those very dealings to which the documents relate, and whose criminality they will, or may, tend to exculpate. So far as they directly touch the criminal dealings, the prosecution necessarily ends any confidential character the documents may possess; it must be conducted in the open, and will lay bare their subject matter. The government must choose; either it must leave the transactions in the obscurity from which a trial will draw them, or it must expose them fully. Nor does it seem to us possible to draw any line between documents whose contents bears directly upon the criminal transactions, and those which may be only indirectly relevant. Not only would such a distinction be extremely difficult to apply in practice, but the same reasons which forbid suppression in one case forbid it in the other, though not, perhaps, quite so imperatively. We hold that the regulation should have been read not to exclude the reports here in question. We cannot of course know, as the record stands, how prejudicial the exclusion may have been, but that uncertainty alone requires a new trial; for it does not affirmatively appear that the error was insubstantial within the meaning of 28 U.S.C.A. § 391.

While we are not prepared to hold that the general conduct of the trial, taken alone, would have required us to reverse the judgment, nevertheless, we cannot pass over the complaints as to the bearing of

the judge. We are of course well aware that, broken from its context, an infelicitous passage between court and counsel often takes on an importance, which it did not in fact have in a trial which, like this one, occupied over twenty court days. Moreover, so far as we can see, the judge did not directly exhibit any bias against the accused either during the trial or in his charge; or indeed indirectly, except as the jury might have inferred it from the harsh asperity and discourtesy with which he at times addressed counsel. It is difficult to know how far this kind of thing influences a jury; or indeed whether it may not actually predispose them to the accused; but whether or not the outbursts of petulant irritation, which repeatedly marred the serenity of the court-room in the case at bar, prejudiced the accused, they were an indignity to counsel which we should not pass in silence, and in which we should have supported them, had they shown less forbearance than in fact they did. In United States v. Minuse, 2 Cir., 114 F.2d 36, 39, we commented upon the same sort of conduct, and we regret to observe that what we then said does not appear to have had the result which we hoped it might. Continuance in such habits must in the end tell heavily in the estimate of judicial service.

■ The complaint that the verdict as to different defendants was taken at separate times, rests upon one of those far-fetched possibilities which in the past were treated more seriously than they are today. What we said in United States v. Cotter, 2 Cir., 60 F.2d 689, 690, will serve as an answer, though the situations are not precisely the same.

■ Upon the new trial the question may once more arise which Herskowitz raises now: i. e. whether he can be convicted of the same conspiracy in which Ward, Nagle and the other inspectors were parties. The argument, as we understand it, is that, since most, if not all of the other accused were employed in the "Permissive Section" while Herskowitz was employed in the "Enforcement Section," he could not have been a party to their conspiracy. The inspectors in the "Permissive Section" examined only the books and dealings of "permittees"; those in the "Enforcement Section" confined their examinations to the customers of "permittees."

Prima facie, these groups had nothing to do with each other, and if one group took bribes from "permittees," and the other from customers, quite independently and without mutual connivance, there was no conspiracy common to all. It is true that at times courts have spoken as though, if A. makes a criminal agreement with B., he becomes a party to any conspiracy into which B. may enter, or may have entered, with third persons. That is of course an error: the scope of the agreement actually made always measures the conspiracy, and the fact that B. engages in a conspiracy with others is as irrelevant as that he engages in any other crime. It is true that a party to a conspiracy need not know the identity, or even the number, of his confederates; when he embarks upon a criminal venture of indefinite outline, he takes his chances as to its content and membership, so be it that they fall within the common purposes as he understands them. Nevertheless, he must be aware of those purposes, must accept them and their implications, if he is to be charged with what others may do in execution of them.

■ Upon the new trial if it shall appear that Herskowitz in fact supposed that there was only a limited plan or scheme, and that it did not include inspectors of the "Permissive Section," he will not be proved to have been a party to the conspiracy laid in the indictment, and there will therefore be a variance. Yet it need not be a fatal variance; the situation will then be that one conspiracy has been proved, confined to inspectors in the "Permissive Section," and a separate conspiracy has been proved to which only Herskowitz and the "permittees" or customers who dealt with him were parties. That was the situation dealt with in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, and the variance is immaterial, for the two conspiracies are ordinarily near enough in content to be tried together, although care should of course be taken to confine the evidence of each conspiracy to the conspirators concerned. United States v. Liss, 2 Cir., 137 F.2d 995, 998, 999.

The conviction of all the accused will be reversed.

The cause will be remanded for a new trial of Ward, Nagle and Herskowitz, and for dismissal of the indictment against Andolschek.