**O'NEILL v. UNITED STATES et al.**

No. 287 of 1946.

United States District Court
E. D. Pennsylvania.

Aug. 23, 1948.

828

Abraham L. Freedman and William M. Alper, of Freedman, Landy & Lorry, all of Philadelphia, Pa., for plaintiff.

Thomas F. McGovern, Sp. Atty., Department of Justice, of Washington, D. C., and Gerald A. Gleeson, U. S. Atty., and James P. McCormick, Asst. U. S. Atty., both of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

This is an action under the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., brought by a seaman for personal injuries sustained when the tanker Cedar Mills was damaged by an explosion in the harbor of Ancona, Italy, on November 19, 1945. Although not averred in the libel, there now seems to be no doubt that the Cedar Mills was sunk by a German mine. The specifications of negligence in the libel relate mainly to the navigation of the ship, failure to have her protected by degaussing and failure to take proper care of the libellant after his injury.

The libellant filed interrogatories and later withdrew them and filed substituted interrogatories, to which the respondent filed objections. The objections went mainly to the point that the interrogatories were burdensome and practically compelled the respondent to prepare the libellant's case for him. They raised no question of privilege or immunity. The Court overruled the objections and ordered the interrogatories to be answered within 30 days. The respondent having failed to comply, the Court entered an order to compel answers. The respondent then filed answers which are quite complete and indicate a bona fide effort to make full disclosure—except in one particular. Interrogatory No. 2 asked, among other things, that the respondent attach copies of written statements of persons having knowledge of the accident, taken by the Federal Bureau of Investigation. These statements the respondent did not produce, answering that part of the interrogatory as follows: " * * * Respondent respectfully informs the Court that these statements were taken by Agents in many parts of the United States who are members of the Bar of divers States as part of their legal duties in the Department of Justice; that they are the work product of the Department of Justice; and that under Department of Justice Order # 3229 of May 2, 1939, they are privileged." The respondent also filed, with its answer to the interrogatories, an affidavit containing a very full account of the accident and the ensuing investigations.

The libellant in a motion, setting forth the foregoing facts, has moved the Court for judgment under Admiralty Rule 32C in his favor, with an order that the trial be limited to the question of damages.

■ The interrogatories were filed under Admiralty Rule 31, which is a counterpart of Rule 33 of the Federal Rules of Civil Procedure. A preliminary question is whether it is proper practice to call for a copy of a witness's written statement in answer to an interrogatory. The interrogatory does not ask for the production of an original document and its purpose was not to obtain inspection of such a document. Its purpose was to learn facts of which the respondent has obtained knowledge through interviews with witnesses. As the best method of getting these facts, it asks that the information be given by attaching copies of any written statements which the persons interviewed may have given. This practice was approved by this Court in De Bruce v. Pennsylvania R. Co., 6 F.R.D. 403.

There cannot be any doubt that a party may be compelled by interrogatories to state facts known to him and to name the wit-

nesses from whom he learned them. I understand that the respondent does not dispute this, but contends that if a witness has told his story in written form, a copy of the statement may not be asked for. Of course, attaching a copy happens to be the one way of making sure that the facts are completely and accurately disclosed. The respondent's argument amounts in effect to saying that a party interrogated must give the substance of information received by him from a witness—which means that he paraphrases and edits the witness's statement—but can refuse to disclose exactly what the witness said. Such a position, it seems to me, is wholly untenable and, following the De Bruce case, I rule that under Admiralty Rule 31, as under Civil Rule 33, copies of statements of witnesses can be asked for and must be produced in answer to interrogatories—unless, of course, they contain privileged matter or mere matters of opinion, in which case the better practice is that they be first submitted to the judge who can blue pencil the objectionable parts.

Turning now to the claim of privilege, it appears that the respondent's argument and the affidavit filed in support of it involve several distinct questions, and some analysis is required. As pointed out by Wigmore (3rd Edition, Secs. 2378 et seq.) when the government or an executive officer, as a party to a lawsuit, raises the question of privilege it may mean one or more of a number of things.

In the first place, it is to be noted that the general policy of the common law, prohibiting disclosure of state secrets the publication of which might seriously embarrass or harm the government in its diplomatic relations, military operations or measures for national security, is not involved in this case. There is no suggestion that matter contained in the statements asked for includes anything of that kind.

■ Second, the claim that the matter asked for is protected from discovery by the Supreme Court's decision in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, because some of the F.B.I. agents are members of the bar (as well as investigators), is without merit. Although the Su-

preme Court recognized, in Hickman v. Taylor, that the well-defined common law privilege, which protects confidential communications between lawyer and client could not be invoked, the case was decided wholly upon considerations of policy arising from the attorney-client relationship, chief of which was the demoralizing effect upon the legal profession and the practice of law generally of requiring a professional adviser to make the disclosure there sought. In the present case, although some of the F.B.I. investigators may have been lawyers, the relationship between them and the government has nothing remotely in common with the relationship between a lawyer and his client. That relationship simply does not exist in the present case. It is not pretended that the agents who collected this information either advise the government in a professional capacity or have anything to do with conducting the litigation, and none of the considerations of policy which moved the Court, in Hickman v. Taylor, supra, are present.

■ The third question is whether the statutes of the United States expressly confer the immunity claimed. R.S. 161, 5 U.S. C.A. § 22 (which embodies the Act of 1870 organizing the Department of Justice), authorizes the Attorney General to make rules concerning the custody of papers and documents of the Department. In pursuance of this authority, the Attorney General promulgated a rule, originally Sec. 65 of the Rules and Regulations of the Department of Justice, and now Department of Justice Order No. 3229 of May 2, 1939, forbidding disclosure of any such documents by an officer or employee of the Department without the express consent of the Attorney General. Without quibbling about whether the regulation applies to copies of statements containing facts otherwise subject to discovery, I shall assume that it does. If R.S. 161 and the Regulation stood alone there would be nothing more to the case. However, the Suits in Admiralty Act, 46 U.S.C.A. § 743, puts the government in all respects upon a par with private individuals in litigation under that Act. There could have been no purpose in enacting that such suits "shall proceed * * * according to

\* \* \* the rules of practice obtaining in like cases between private parties," unless that had been the intention. Had it been otherwise, Sec. 2 of the Suits in Admiralty Act, 46 U.S.C.A. § 742, providing that a libel in personam may be brought against the United States, without more, is quite sufficient to have brought the litigation within the scope of ordinary admiralty practice. Certainly the right accorded to seamen to sue the government by the Suits in Admiralty Act would be of very little value if the government could in its character as sovereign refuse to comply with any order of the Court in procedural matters without incurring any penalty or disadvantages. Upon this point I agree fully with the excellent opinion of Judge Rifkind in Bank Line v. United States, D.C., 76 F.Supp. 801, and need not elaborate.

The final contention made by the government is that, entirely apart from any statute, the Attorney General personifying the executive branch of the government, is free to refuse disclosure of any evidence in his possession, regardless of its character, for any reason which may seem to him sufficient—free, in the sense that compulsory process against him is beyond the constitutional power of the legislature to authorize or the Court to issue, physical compulsion being, of course, out of the question. The basis of this contention is the constitutional theory of the separateness and mutual independence of the three coordinate branches of the government.

The question is one which has arisen many times in our history but I do not think that it is presented in this case. Admiralty Rule 32C does provide that a party or witness refusing to make disclosure may be held in contempt, but this Court has not been asked for a contempt order and does not intend to enter one. Consequently, the constitutionality and validity of that particular portion of Rule 32C is not now before this Court; nor is the question of how far, if at all, an officer or employee of the executive is amenable to compulsory process.

■ Nor can it be said that the remedy asked for amounts to compulsion under another form. True, if the Attorney General refuses to make the disclosure the government will incur certain procedural disadvantages by way of penalty and may lose its case, but it is the government that is being sued, not the Attorney General, and the government has consented. When it enacted the Suits in Admiralty Act, Congress was in essence authorizing the payment out of the Treasury of money upon judgments obtained in such suits. It was entirely within the constitutional powers of Congress to set up any procedure it pleased by which a suitor in such case could obtain a judgment. It could have curtailed or eliminated defenses, or handicapped the government procedurally in any manner. Actually, it went no further than to provide that certain omissions and defaults in the course of a suit would have the same effect in the case of the government as in the case of a private litigant.

No doubt the Attorney General is put to a choice, but it is not in this case (nor will it be in any case) the dilemma between jeopardizing the military or diplomatic interests of the nation and running the risk of losing the lawsuit. The general policy of the common law makes such state secrets absolutely privileged and neither the Act nor the Rules indicate an intention to predicate a default upon refusal to disclose privileged matter—though I see no reason why they might not have done so. The Attorney General's choice is merely between adhering to a general policy which involves little more than departmental routine and permitting the government to incur procedural penalties which may result in a judgment against it, a consequence to which Congress has given the government's consent.

■ In applying the sanctions by Rule 32C for refusal to make disclosure the Court has a wide discretion. The libellant in this case has asked for judgment by default. I do not think that in the present case this remedy is appropriate. Although Rule 55(e) of the Rules of Civil Procedure, providing that no default shall be entered against the United States unless the claim for relief is established by satisfactory evidence, does not apply to admiralty proceedings, I think the policy of the Rule

is generally sound and is particularly applicable to a case like the present. I think that it would be proper to make an order refusing to allow the government in this case to oppose the libellant's claim that his injury was due to negligence on the part of the personnel of the Cedar Mills or the unseaworthiness of the vessel, or both.

An order may be presented.