UNITED STATES ex rel. TOUHY v. RAGEN, Warden, et al.

No. 9916.

United States Court of Appeals
Seventh Circuit.

Feb. 24, 1950.

322

Otto Kerner, Jr., U. S. Atty., John Peter Lulinski, Anthony Scariano, Asst. U. S. Attorneys, Chicago, Ill., for petitioner.

Robert B. Johnstone, Howard Bryant, James A. Howell, Chicago, Ill., for respondent.

Before MAJOR, Chief Judge, FINNEGAN and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

Roger Touhy, relator in the court below, sued out a writ of habeas corpus against Joseph E. Ragen, Warden of the Illinois State Penitentiary, Joliet, Illinois, respondent in the court below, on the ground that he had been unlawfully convicted and was being illegally detained by respondent in violation of relator's constitutional rights. While the allegations of the petition for writ of habeas corpus are of little consequence in relation to the matter before us, it may be pertinent to note that it was alleged, among other things, that certain authorities of the State of Illinois and Cook County, Illinois, conspired to convict relator of kidnapping one John (Jake the Barber) Factor, and that relator was singled out for arrest, tried and convicted for a crime which never occurred.

While the habeas corpus matter was being heard in the District Court before Honorable John P. Barnes, and on May 13, 1949, counsel for relator caused a subpoena duces tecum to be issued, directed at George R. McSwain, Special Agent in charge of the Chicago office of the Federal Bureau of Investigation, and the Honorable Tom C. Clark, Attorney General of the United States, "c/o Otto Kerner, Jr., United States Attorney." The subpoena was served upon McSwain and service on the Attorney General was attempted by serving the United States Attorney for the Northern District of Illinois. The subpoena commanded that the named persons produce before the District Court "certain records of investigation made and statements of witnesses taken and procured in connection with the alleged kidnapping of John (Jake the Barber) Factor in and about Chicago, Cook County, Illinois in the months of July and August, 1933, including specifically transcript, records, memoranda, and other data with respect to certain show ups held in the offices of the Federal Bureau of

Investigation, Chicago, Illinois, on or between the dates of July 19 to July 24, 1933, inclusive, together with all copies, drafts, and vouchers relating to the said documents, and all other documents, letters, and paper writings whatsoever, that can or may afford any information or evidence in said cause."

On June 1, 1949, McSwain personally and by the District Attorney as his counsel appeared in response to the subpoena duces tecum, and Mr. Robert B. Johnstone appeared for the relator. After an extended colloquy between the respective attorneys and the court, McSwain took the witness stand. More will be said later concerning the happenings in court, but at this point it is sufficient to note that McSwain, acting under instructions from the Attorney General, declined to produce the material commanded by the subpoena, and as justification for such refusal relied upon Department of Justice Order No. 3229, and Supplement No. 2 to said order, dated June 6, 1947. The court, on June 2, 1949, in the order appealed from adjudicated McSwain guilty of contempt of court because of his refusal to produce the records called for in the subpoena and directed that he be committed to the custody of the Attorney General of the United States or his authorized representative for imprisonment "until he shall obey the Order of this Court and produce to this Court the records referred to in the Subpoena Duces Tecum or until discharged by due process of law."

Title 5 U.S.C.A. § 22, R.S.Par. 161, in effect since 1872, provides: "The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it."

The Attorney General of the United States, on May 2, 1939, pursuant to the authority vested in him by this statutory provision, promulgated Order No. 3229, which provides:

"All official files, documents, records and information in the offices of the Department of Justice, including the several offices of United States Attorneys, Federal Bureau of Investigation, United States Marshals, and Federal penal and correctional institutions, or in the custody or control of any officer or employee of the Department of Justice, are to be regarded as confidential. No officer or employee may permit the disclosure or use of the same for any purpose other than for the performance of his official duties, except in the discretion of The Attorney General, The Assistant to The Attorney General, or an Assistant Attorney General acting for him.

"Whenever a subpoena *duces tecum* is served to produce any of such files, documents, records or information, the officer or employee on whom such subpoena is served, unless otherwise expressly directed by The Attorney General, will appear in court in answer thereto and respectfully decline to produce the records specified therein, on the ground that the disclosure of such records is prohibited by this regulation."

Putting aside for subsequent discussion Supplement No. 2, we shall first consider the relator's contention that Order No. 3229 is unauthorized by the statutory provision and is therefore invalid, or if it is in conformity, the statutory enactment is unconstitutional. This is on the theory, as we understand, that such a regulation is not "not inconsistent with law," as provided by the statute, for the reason that it represents an invasion by the executive department of the government upon the inherent power of the judiciary. And from a statement appearing in colloquy this appears to have been the reasoning of the District Judge.

That this contention is not sound is forcibly demonstrated by the cases, the more important of which are Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846; Rosen et al. v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406; Ex parte Sackett, 9 Cir., 74 F.2d 922; Fussell et al. v. United States, 5 Cir., 100 F.2d 995, and In re Valecia Condensed Milk Co., 7 Cir., 240 F. 310 (there are

many District Court opinions to the same effect). By these same cases it is equally well established that courts have no jurisdiction or power to punish executive officers or employees for obeying the orders or instructions of their superiors in adhering to regulations promulgated pursuant to statutory authority and requiring them to refuse to disclose or divulge information, records, documents or other data.

In the Boske case, supra, the Collector of Internal Revenue refused the production of certain reports made by distillers which were in his custody as an officer of the United States Treasury Department, and for such refusal was adjudged to be in contempt of court. The Collector's refusal was based upon a regulation substantially the same as Order No. 3229 here relied upon, and was promulgated under the authority of the same statutory provision. The court, in reversing the order adjudicating that the Collector was in contempt, among other things stated, 177 U.S. at page 469, 20 S.Ct. at page 705: "The papers in question, copies of which were sought from the appellee, were the property of the United States, and were in his official custody under a regulation forbidding him to permit their use except for purposes relating to the collection of the revenues of the United States. Reasons of public policy may well have suggested the necessity, in the interest of the government, of not allowing access to the records in the offices of collectors of internal revenue, except as might be directed by the Secretary of the Treasury. The interests of persons compelled, under the revenue laws, to furnish information as to their private business affairs would often be seriously affected if the disclosures so made were not properly guarded. Besides, great confusion might arise in the business of the department if the Secretary allowed the use of records and papers in the custody of collectors to depend upon the discretion or judgment of subordinates. At any rate, the Secretary deemed the regulation in question a wise and proper one, and we cannot perceive that his action was beyond the authority conferred upon him by Congress. In determining whether the regulations

promulgated by him are consistent with law, we must apply the rule of decision which controls when an act of Congress is assailed as not being within the powers conferred upon it by the Constitution; that is to say, a regulation adopted under § 161 of the Revised Statutes should not be disregarded or annulled unless, in the judgment of the court, it is plainly and palpably inconsistent with law. Those who insist that such a regulation is invalid must make its invalidity so manifest that the court has no choice except to hold that the Secretary has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress." The court concluded, 177 U.S. at page 470, 20 S.Ct. at page 706, by stating that "the Secretary * * * may take from a subordinate, such as a collector, all discretion as to permitting the records in his custody to be used for any other purpose than the collection of the revenue, and reserve for his own determination all matters of that character." In that case, as here, the contention was made that the regulation was inconsistent with law. In denying such contention, the court stated, 177 U.S. at page 469, 20 S.Ct. at page 705: "There is certainly no statute which expressly or by necessary implication forbade the adoption of such a regulation. This being the case, we do not perceive upon what ground the regulation in question can be regarded as inconsistent with law, unless it be that the records and papers in the office of a collector of internal revenue are at all times open of right to inspection and examination by the public despite the wishes of the department. That cannot be admitted."

In Ex parte Sackett, supra, the facts were almost identical with those of the instant case. There, Sackett, Acting Special Agent in charge of the Federal Bureau of Investigation, was subpoenaed to produce certain records and documents in his possession as agent of the Department of Justice in a civil suit to which the government was not a party. Sackett, just as did McSwain in the instant case, appeared in response to a subpoena duces tecum and declined to produce the documents called for

on the ground that by the rules and regulations of the Department of Justice, approved and promulgated by the Attorney General under the authority of the same statutory provision above quoted, he was prohibited from producing the records and that in addition he had communicated with the Attorney General of the United States, just as was done in the instant situation, and had been informed by him "that the documents sought are part of the official and confidential records of the Department, that it is against public policy for the Department to produce any part of the documents obtained confidentially * * *." The trial court adjudged Sackett guilty of contempt for his refusal to produce in response to the subpoena. The Court of Appeals assumed the correctness of the determination made by the trial judge as to the materiality of the evidence but reversed the judgment appealed from and held that the documents called for, although physically in possession of Sackett, were in law in the custody of the Attorney General and that inasmuch as the witness was prohibited from producing them by the lawful rule of the Department, the court had no power or authority to compel him to do so. The court stated, 74 F.2d at page 923: "The statute of the United States, 5 U.S.C.A. § 22, Rev.St. § 161 (see footnote 1), authorizes the Attorney General to make rules concerning the custody of the papers and documents of the Department. In pursuance of this authority, the Attorney General has promulgated the rule (No. 65) as shown in the footnote 2. This regulation has the force of law, and the court had no jurisdiction or power to punish an officer for conforming to that law. [Citing numerous cases, including Boske v. Comingore, supra.]"

This court, in Re Valecia Condensed Milk Co., supra, applied the reasoning and decision of the Boske case and reversed an order adjudicating the Secretary of the Tax Commission of the State of Wisconsin in contempt for refusal to comply with a subpoena to produce certain tax records. There, a provision of the State statute quite similar to the Federal provision was involved. This court cited the Boske case

with approval and, concerning the contention that a refusal to produce was an impingement upon the power of the court, stated, 240 F. at page 314: "Without in any degree trenching upon the essential and full power of courts to compel the production of papers, we must recognize also the generally declared public policy against revealing such returns—made, as they are, under compulsion of law, for the particular purpose of taxation; a public policy repeatedly recognized by the courts. With an enactment such as the one in question, directed against the production of these returns, it is not lightly to be presumed that the public policy manifested by such statute was intended to be practically neutralized by the excepting words."

The holding of the Boske case has been cited and followed on innumerable occasions and, so far as we are aware, there is no reported case where it has been repudiated. In fact, it has been cited with approval by the Supreme Court as late as March 26, 1945, Commissioner of Internal Revenue v. Wheeler et al., 324 U.S. 542, 547, 65 S.Ct. 799, 89 L.Ed. 1166 (footnote). True, it has been severely criticized by Dean Wigmore in his work on Evidence, 3rd Edition, Vol. 8, Sec. 2378a et seq. In fact, Wigmore is the sole authority relied upon by relator in support of his contention that the regulation is invalid, other than some cases decided long prior to the decision in the Boske case.

True, relator cites a line of cases where disclosure in some form or another has been required. These cases, however, without exception so far as we are aware, apply to situations where the government as a party to the suit or otherwise has waived the privilege of non-production. It appears to be the theory of such cases generally that when the government becomes a party to a suit it does so the same as any other litigant, and that it cannot occupy the anomalous position of placing one foot within the judicial sanctuary and leaving the other without. But none of these cases disagree with the rationale of Boske and many of them expressly recognize it.

Conspicuous among such cases is that of United States v. Andolschek et al., 2 Cir., 142 F.2d 503, where the government was prosecuting certain minor officials of the Alcohol Tax Unit. At the trial the defendants requested certain reports in the possession of the government which the trial court denied upon the ground that the regulation forbade disclosure. The Court of Appeals, after noting that the validity of a similar regulation was upheld in Boske v. Comingore, supra, stated, 142 F.2d at page 506: "However, none of these cases involved the prosecution of a crime consisting of the very matters recorded in the suppressed document, or of matters nearly enough akin to make relevant the matters recorded. That appears to us to be a critical distinction. While we must accept it as lawful for a department of the government to suppress documents, even when they will help determine controversies between third persons, we cannot agree that this should include their suppression in a criminal prosecution, founded upon those very dealings to which the documents relate, and whose criminality they will, or may, tend to exculpate. So far as they directly touch the criminal dealings, the prosecution necessarily ends any confidential character the documents may possess; it must be conducted in the open, and will lay bare their subject matter. The government must choose; either it must leave the transactions in the obscurity from which a trial will draw them, or it must expose them fully."

In United States v. Grayson, 2 Cir., 166 F.2d 863, at page 870, the court in a criminal prosecution sustained a request by the defendant that certain documents in the possession of the government be produced, and in doing so stated: "Be that as it may, there is an obvious distinction between documents held by officials who are themselves charged with the administration of those laws for whose violation the accused has been indicted, and those which are not so held. All we need to hold—and all we have held hitherto—is that when the privilege is conditional upon the consent of such a department, the prosecution will fail unless the officials are willing to produce them."

A similar situation is disclosed in United States v. Krulewitch, 2 Cir., 145 F.2d 76, 156 A.L.R. 337. The court stated, 145 F.2d at page 79: "When their possessor [referring to the government] chooses to bring into the light the transaction to which the communications relate, he may no longer suppress the communications themselves."

In United States v. Beekman et al., 2 Cir., 155 F.2d 580, at page 584, where the defendants were charged with a violation of the Emergency Price Control Act, 50 U.S. C.A.Appendix, § 901 et seq., the court states the rule as to waiver of privilege by the government thus: "We have recently held that when the government institutes criminal proceedings in which evidence, otherwise privileged under a statute or regulation, becomes importantly relevant, it abandons the privilege. [Citing cases.]"

And the waiver of this privilege by the government has been invoked where it is the defendant. Bank Line, Limited v. United States, 2 Cir., 163 F.2d 133, and O'Neill v. United States et al., D.C., 79 F.Supp. 827. Both of these cases were suits under the Admiralty Act, 46 U.S.C.A. § 741 et seq., wherein the government by statute had consented to be sued. As was stated in the O'Neill case, 79 F.Supp. at page 829, the Admiralty Act "puts the government in all respects upon a par with private individuals in litigation under that Act."

Two cases are called to our attention wherein the government was not a party and where production was required. Crosby v. Pacific S. S. Lines, Ltd., 9 Cir., 133 F.2d 470, 475, and Zimmerman v. Poindexter et al., D.C., 74 F.Supp. 933. Relator places much reliance upon the Crosby case and urges that it correctly states the rule applicable in the instant situation. A reading of those cases, however, discloses that they both are further illustrative of situations wherein the privilege of non-disclosure had been waived. In the Crosby case, correspondence in the possession of an agent of the British government by the name of Walsh was sought. The court,

after noting that it was controlled by the same rule as "would apply to a similar department of government here", held that the privilege should be denied in the absence of a showing that "(1) existence of a rule of the British Ministry of Shipping that all correspondence between its officers is confidential; (2) existence of a direction, by an officer superior to Walsh, to Walsh that the correspondence is confidential; (3) existence of a direction to Walsh by an officer superior to Walsh, authorizing the latter to determine what correspondence is confidential; and (4) how the correspondence would in any manner jeopardize the public interest, safety or security." And the court concluded, 133 F.2d at page 475, by stating, "It is enough to say that for one to claim a privilege, he must make a showing that he is entitled to one, and that no such showing, in our opinion, was made here." Thus, there is nothing in this case which indicates the court would have required production if the privilege had been claimed by an agency of government authorized to do so; in fact, the opinion indicates that in such a situation the holding would have been different.

In the Zimmerman case, a subpoena calling for the production of certain documents, including reports made by the Federal Bureau of Investigation, was directed at the Commanding General of the Army. The Department of Justice objected to such production and relied upon its Order No. 3229. The court reasoned that the regulation applies only to documents in the possession of the Department of Justice, or with its officers or employees, and pointed out, 74 F. Supp. at page 936, "The requisitioned material is here sought from a wholly different organization and from personnnel in whose possession it has been voluntarily deposited by the Department of Justice." There again was a waiver of the privilege by the Department otherwise entitled to claim it.

We cite and quote from the cases in which production or discovery has been required of the government upon the basis of the waiver of privilege for the purpose of distinguishing from the rationale of the Boske case and those which have followed

it and not for the purpose of deciding either what constitutes waiver on the part of the government or the extent to which it should be applied in a particular case. In this respect it is pertinent to note that even in those cases where production or discovery has been required it has usually been held or at least indicated by the court that the material or information sought should be submitted to the court for its determination as to materiality. United States v. Krulewitch, supra, 145 F.2d page 79; United States v. Cohen et al., 2 Cir., 145 F.2d 82, 92; United States v. Ebeling, 2 Cir., 146 F.2d 254, 256; Crosby v. Pacific S. S. Lines, Ltd., supra, 133 F.2d page 475; United States ex rel. Schlueter v. Watkins, D.C., 67 F.Supp. 556, 561.

Thus, we reach the conclusion that Order No. 3229 as promulgated by the Attorney General is authorized by the statute and confers upon the Department of Justice the privilege of refusing to produce unless there has been a waiver of such privilege.

Admittedly, the government was not a party to the proceeding out of which the subpoena in the instant matter issued. Did it waive its privilege of non-disclosure in some other manner? This brings us to a consideration of Supplement No. 2 to Order No. 3229 promulgated by the Department of Justice June 6, 1947, directed to all United States Attorneys and entitled "Procedure to be followed upon Receiving a Subpoena Duces Tecum." The letter of the Attorney General directed to U. S. Attorney Kerner, dated May 25, 1949, among other things stated: "It is the Department's position that it should decline to produce the records in question. It is desired, therefore, that you proceed in accordance with the instructions given in Supplement No. 2 of Order No. 3229. It is requested that you or one of your assistants be present at the hearing on May 31, 1949, in order to represent Special Agent McSwain."

The directive so far as here material provides: "Therefore, the officer or employee should, unless directed to the contrary by The Attorney General, bring with him the records and documents which are called for by the subpoena even though

the Department takes the position that it is not necessary to produce them. Thus, a subpoena is complied with, although a reason is offered for not actually submitting the documents requested."

It provides further: "It is not necessary to bring the required documents into the court room and on the witness stand when it is the intention of the officer or employee to comply with the subpoena by submitting the regulation of the Department (Order No. 3229) and explaining that he is not permitted to show the files."

█ Immediately following that which we have just quoted is a statement which while somewhat confusing and ambiguous appears to amount to a contraction of the unlimited privilege otherwise possessed by the Department of Justice. The directive provides: "If questioned, the officer or employee should state that the material is at hand and can be submitted to the court for determination as to its materiality to the case and whether in the best public interests the information should be disclosed. The records should be kept in the United States Attorney's office or some similar place of safekeeping near the court room. Under no circumstances should the name of any confidential informant be divulged."

Certainly this language contemplates some circumstances when the material called for must be submitted "to the court for determination as to its materiality to the case and whether in the best public interests the information should be disclosed." The challenging question is, what are the circumstances under which submission must be made? It appears that the officer or employee is only required to do so "if questioned". We construe those words to mean that the material called for must be submitted to the court for the limited purpose stated if the person under subpoena is requested to do so. Conversely stated, it means that submission is not required in the absence of a request by the court or opposing counsel that it be made. And the directive to submit under the circumstances stated is to that extent a waiver by the Department of Justice of its nonproduction privilege.

McSwain was called as a witness and testified that he was a Special Agent in charge of the Federal Bureau of Investigation for the district including Chicago, Illinois, and that he had been served with a subpoena duces tecum calling for the production of certain documents and records in his possession. His examination continued:

"Q. Have you produced the documents in response to the subpoena given you? A. No, sir, I haven't.

"Q. Will you produce them? A. I must respectfully advise the Court that under instructions to me by the Attorney General that I must respectfully decline to produce them, in accordance with Department Rule No. 3229."

It was upon this refusal that McSwain was adjudged in contempt of court.

█ It will be noted that he was called upon to produce all documents and material called for in the subpoena without limitation and that at no time was he questioned as to his willingness or requested to submit such documents and material "to the court for determination as to its materiality to the case and whether in the best public interests the information should be disclosed." Therefore, if the adjudication is to be sustained it must be because of McSwain's failure to make unlimited production because he was never requested to or refused to submit on any other or different condition. Such a holding would mean that there was no privilege lodged in the Department of Justice to refuse production. In view of the law as announced in the cases which we have previously discussed, we think the theory is not tenable. Submission could only have been required to the extent the privilege had been waived by the Attorney General and for the purpose and in the specific manner designated.

More than that, in a colloquy between counsel and the court prior to the calling of McSwain as a witness, the District Attorney offered to provide the documents and material called for in the subpoena to the court for its personal inspection. This procedure was satisfactory to counsel for the relator, who stated, "My own feeling is

that the proper thing to do would be to permit the Court to examine these things without any of us." To this proposal, agreed to by counsel for both McSwain and the relator, the court stated, "I don't want to see them—I don't want to see them without counsel."

Thus, the court was unwilling to examine the material for the purpose of determining its materiality and whether it was in the best public interest that such information should be disclosed. In our view, this was the precise duty imposed upon the court, and McSwain was not required to produce for any other purpose. The court's refusal in this respect, previously announced in open court, perhaps accounts for the fact that McSwain when on the stand was not requested to make production for such purpose.

The order appealed from is reversed and the cause remanded, with directions that appellant be discharged from the custody of the Attorney General.

LINDLEY, Circuit Judge, dissenting.

As I understand the law, the public policy controlling in our national jurisprudence is that a person should not be deprived of his liberty without giving him an opportunity to have access to material which might exculpate him, and that he should have a reasonable opportunity to produce evidence that may prove his innocence. Consequently, frequently arising is the broad question of whether an executive official is free to refuse disclosure of any evidence in his possession, regardless of its character, for any reason which to him may seem sufficient, "free, in the sense that compulsory process against him is beyond the constitutional power of the legislature to authorize or the Court to issue, physical compulsion being, of course, out of the question", Judge Kirkpatrick in O'Neill v. U. S., D. C., 79 F.Supp. 827, 830. But this broad issue is not necessarily presented in this case, for, irrespective of what may be the constitutional limitations upon the power of other branches of government, the Department of Justice, acting under power granted by the Congress, has provided by its own directives, a method by which, by judicial

decision, the rights of a person seeking to procure evidence in the custody of the Department, are fully protected. In other words, those directives, having provided reasonable protection for the rights of applicants, satisfy constitutional demands.

Under the pertinent administrative directive, as I interpret it, it was the duty of appellant, as a subordinate in the Department of Justice, to produce the subpoenaed documents for examination by the court, in order that the latter might determine their materiality and whether their nondisclosure was essential to the public interest. But the evidence discloses that appellant himself, while on the witness stand, unqualifiedly refused to produce them, and the ultimate statement of the United States Attorney plainly indicates that, pursuant to instructions from his department superior, the actual records would not and could not be submitted to the court for its determination in the respects mentioned. Thus, he said expressly that he had never intended actually to produce the documents and that he could not do so under the orders of his superior. Thus, it seems clear to me that appellant, acting as he interpreted the directions of the Department of Justice compelled him to act, violated the directive. The inevitable result is that the Department, despite its own directive, has taken upon itself the determination of materiality and public interest and effectually prevented the court from making a judicial determination of those questions.

It is at this point that I must diverge from the majority's reasoning. To deny the petitioner the opportunity to obtain evidence that might exculpate him from a judgment of long imprisonment, is arbitrarily to deprive him of his rights under the pertinent directive. If the information is material or relevant, or if it is of such character as to demand its nondisclosure, adjudication of those questions is clearly a judicial function, not that of the administrative official who is subpoenaed to produce them. To deny the power of the court to make the determination is to usurp the judicial function. Such action, from time immemorial, as I have understood, has been held to thwart the division of powers

contemplated by and expressed in our constitution. If we ever become so unfortunate as to have an administration so unprincipled in character, so ruthless, as to rob the courts of their functions and as to usurp judicial power, then we may well revert to the nefarious inquisitions of old or the abhorrent gestapo of a lately existent ruthless government. Thus, in Duncan v. Connell, Laird & Co., Ltd. (1942) A.C. 624, discussing the nature of the privilege to withhold production of public documents on grounds of public interest, the English court said that upon objection to production of such documents, the ruling to be made involved a "decision of the judge". In Zimmerman v. Poindexter, D.C., 74 F. Supp. 933, 935, the court said, in a similar situation, that it is a "judicial question for ultimate decision by the court." Holding that it is eminently appropriate that "relevant documents which elucidate those vital issues in this action, should not be withheld from the court," the opinion proceeds: "To rule otherwise, in the absence of controlling authority would do violence to the court's duty to search for the truth and would be inimical to the traditional concept of the subpoena duces tecum as a vehicle of proof in Anglo-American jurisprudence." The language of Dean Wigmore in his work on Evidence, 3rd Ed., Secs. 2378a, 2379 is pertinent: "The truth cannot be escaped that a court which abdicates its inherent function of determining the facts upon which the admissibility of evidence depends will furnish to * * * (administrative) officials too ample opportunities for abusing the privilege. The lawful limits of the privilege are extensible beyond any control, if its applicability is left to the determination of the very official whose interest it may be to shield a wrongdoing under the privilege. Both principle and policy demand that the determination of the privilege shall be for the court; and this has been insisted upon by the highest judicial personages both in England and the United States."

Whatever the cause of the violation of the department's own directive, whatever may have occurred in the communications between its head and its subordinates to lead to misunderstanding and to what I take to be, an inadvertent error made by conscientious law abiding officials, I think it is clear that the court, deprived of the opportunity to exercise its judicial function, was perfectly justified in entering the order from which this appeal was taken.

I would affirm the judgment, but direct that appellant may purge himself completely by producing the documents subpoenaed, for the court's determination of the issues lodged in it by the directive.