335 F.2d 372
 Sam GIANCANA, Plaintiff-Appellee,
v.
Marlin W. JOHNSON, Agent in Charge, Chicago Office of the
Federal Bureau of Investigation, Defendant-Appellant.
In the matter of the Alleged Criminal Contempt of Marlin W.
Johnson, Contemnor-Appellant.
 No. 14271.
 United States Court of Appeals Seventh Circuit.
 June 30, 1964, Rehearing Denied Aug. 11, 1964.
 
 Edward V. Hanrahan, U.S. Atty., John Peter Lulinski, Asst. U.S. Atty., Chicago, Ill., James P. O'Brien, U.S. Atty., Frank E. McDonald, Asst. U.S. Atty., John Peter Lulinski, Thomas W. James, Asst. U.S. Attys., of counsel, for appellant.
 George N. Leighton, Chicago, Ill., for appellee.
 Before SCHNACKENBERG, KILEY and SWYGERT, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Marlin W. Johnson, agent in charge, Chicago office of the Federal Bureau of Investigation, defendant, has appealed from an order imposing a fine on him for criminal contempt entered by the district court, described by it as a summary commitment order, after he was called as an adverse witness by Sam Giancana, plaintiff, pursuant to 28 U.S.C.A., rule 43(b), during the hearing of the above-entitled case. Johnson refused to answer certain questions put to him by plaintiff's counsel and was fined $500 by the court.[1]
 
 
 2
 The court's order recites five specifications of occurrences at a hearing on July 15, 1963, upon which the court relied in adjudging Johnson guilty of criminal contempt of court. We now consider these specifications in numerical order.
 
 I.
 
 3
 Plaintiff's attorney, George N. Leighton, showed Johnson a copy of a telegram marked plaintiff's exhibit 5 for identification and asked if on June 25, 1963 he had received the original thereof. The witness replied:
 
 
 4
 'Your Honor, I respectfully decline to answer the question based on instructions from the Attorney General of the United States and pursuant to departmental Order No. 260-62.'
 
 
 5
 Mr. Lulinski (government counsel) stated: 'It is a part of the official file of the Federal Bureau of Investigation, and as such, with respect to that, Mr. Johnson as a subordinate of the Federal Bureau of Investigation, as a subordinate in the Department of Justice, is, by law, bound by the orders and directions of the Attorney General with respect thereto.'
 
 
 6
 The court instructed the witness to answer the question. His answer was that
 
 
 7
 '* * * upon the direction of the Attorney General of the United States, I respectfully submit that I must decline to answer the question under his instructions, pursuant to departmental Order 260-62.'[2]
 
 II.
 
 8
 When Johnson was asked whether he had occasion to call attorney Leighton at his office on June 25, 1963, he answered:
 
 
 9
 'Your Honor, again I decline to answer the question, based upon instructions of the Attorney General of the United States under Departmental Order 260-62.'
 
 The court asked:
 
 10
 'Will you tell me what his instructions were in regard to a question such as this, that does not require you to consult the files of the FBI?'
 
 The witness answered:
 
 11
 'Your Honor, my instructions are 'nor to give any testimony in this matter."
 
 
 12
 The court instructed the witness to answer and the witness replied:
 
 
 13
 'Your Honor, in accordance with the instructions of the Attorney General, I respectfully decline to answer under Departmental Order 260-62.'
 
 III.
 
 14
 Relying on order 260-62, the witness declined to answer the following question by Mr. Leighton:
 
 
 15
 'Mr. Johnson, did you not in a conversation with me by telephone in the afternoon of June 25, 1963, tell me that you were not going to remove from the residence of Mr. Sam Giancana the 24-hour surveillance of FBI Agents that you had placed there? Did you not say that to me?'Johnson based his refusal on an instruction contained in a teletype from the Attorney General addressed to the United States Attorney, Chicago, under date of July 15, 1963, which, as read by the witness, stated:
 
 
 16
 'Your attention is directed to Department Order No. 260-62 which supersedes Order No. 3229. In connection with the matter under which Special Agent Marlin Johnson is now under subpoena, he is instructed to abide by Order No. 260-62. Johnson is instructed not to produce any of the documents called for nor to give any testimony in this matter.'
 
 
 17
 The court instructed the witness to answer. He refused.
 
 IV.
 
 18
 Mr. Johnson was then asked if he was in the courtroom 'a moment ago, were you not, when the witness Carmen Skembare displayed to the Court the movie film taken on June 25, 1963, at and around the premises at 1147 South Wenonah Street in the Village of Oak Park?' The witness replied he declined 'to answer under Departmental Order 260-62, on instruction of the Attorney General.'
 
 
 19
 He was then asked by the court if he would give the same answer to all further questions asked by Mr. Leighton, and he answered in the affirmative.
 
 The court asked:
 
 20
 'That would also apply to questions as to whether you recognize the faces of anyone you knew on the film you saw?'
 
 
 21
 and Johnson answered,
 
 
 22
 'My answer would have to be the same.'
 
 The court then asked:
 
 23
 'Both as to the address on Wenonah Avenue and also in regard to the Fresh Meadows Golf Course?'
 
 The witness answered:
 
 24
 'Your Honor, that is correct on these instructions.'
 
 
 25
 As to all other questions Johnson then continued to refuse to make answer.
 
 
 26
 When the order was entered on July 22, 1963, the court, at Johnson's request, permitted him to make the answer 'Yes' to the question asking whether he was in the courtroom when Skembare displayed the aforesaid film to the court.
 
 V.
 
 27
 Johnson testified that he was in the courtroom 'a moment ago' when three picture films were exhibited and had a view thereof. He was then asked:
 
 
 28
 'Now, did you recognize in those pictures from the first one that we showed, Exhibit 2 to Exhibit 4, any Federal Bureau of Investigation agent under your supervision?'
 
 He replied:
 
 29
 'Your Honor, I respectfully decline to answer under Departmental Order No. 260-62.'
 
 
 30
 The court instructed him to do so and asked for his answer. Johnson said 'It will remain the same, your Honor'.
 
 The court asked:
 
 31
 'May I ask you, Mr. Johnson, whether these films were at any time in the files of the Department of Justice or in the files of the United States Attorney?'
 
 The witness answered:
 
 32
 'Under my instructions, your Honor, from the Attorney General and under Executive-- Departmental Order 260-62, I must decline to answer.'
 
 
 33
 The summary order of commitment recites that, before Johnson was ordered to answer the questions put to him, the court read the provisions of Rules 16-1 and 16-2 of Departmental Order 260-62 and Johnson read to the court the teletype communication from the Attorney General with regard to said order. Thereafter, the court concluded and ruled in open court that Rules 16-1 and 16-2 of said Departmental Order 260-62 did not excuse Johnson from answering the questions put to him as an adverse witness.
 
 
 34
 The court found that the questions put to Johnson were material and relevant to the issues before the court in the hearing of the supplemental motion for preliminary injunction; that notwithstanding the orders of the court, Johnson refused to answer said questions, although the court had made findings that the questions which he was ordered to answer were proper, and that Johnson was under a duty to answer them.
 
 
 35
 The District court further found that the conduct of Johnson in refusing to answer questions put to him, after he had been ordered to do so, is a criminal contempt committed in the presence of the court; and 'this Summary Commitment Order is necessary to vindicate the court's authority and dignity in the premises'.
 
 
 36
 The court adjudged, ordered and decreed that Johnson be punished for such criminal contempt of the court by imposition of a fine of five hundred dollars to be paid within ten days.
 
 
 37
 Johnson found himself involved in a clash of authority between the judicial and executive branches of the federal government. The solution of the conflict requires a reference to an act passed by the legislative department.
 
 
 38
 By 5 U.S.C.A. 22, Congress has authorized the head of each executive department (expressly including the Department of Justice)
 
 
 39
 '* * * to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it. * * *'
 
 
 40
 Such regulations are presumably valid, unless arbitrary and unreasonable or plainly inconsistent with law. Edwards v. Madigan, 9 Cir.,281 F.2d 73, 77 (1960).
 
 
 41
 In the case at bar, Order 260-62 is a regulation not inconsistent with law and there is no contention to the contrary in this case. As such, the order has the force and effect of law. United States v. Barnard, 10 Cir., 255 F.2d 583, 589 (1958), cert. den. 358 U.S. 919, 79 S.Ct. 287, 3 L.Ed.2d 238. We have given recognition to this principle. United States v. Ansani, 7 Cir., 240 F.2d 216, 224 (1957), cert. den. sub nom. Milner v. United States, 353 U.S. 936, 77 S.Ct. 813, 1 L.Ed.2d 759. United States ex rel. Touhy v. Ragen, 7 Cir., 180 F.2d 321, 325 (1950), affirmed 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417; and United States ex rel. Touhy v. Ragen, 7 Cir., 200 F.2d 195 (1952).
 
 
 42
 Therefore, in determining whether Johnson was justified in his refusal to answer the questions put to him in the district court, we are confined by 5 U.S.C.A. 22 to an examination of Order 260-62.
 
 
 43
 As to specification I, he was protected by Order 260-62. It is obvious that this is so because, if Johnson answered that he had received the telegram marked plaintiff's exhibit 5 for identification, the fact would have been established thereby that it was in the files of the Department of Justice.
 
 
 44
 On the other hand, as to specifications II and III, no application of Order 260-62 was involved. Johnson was asked merely to answer whether he had occasion to call attorney Leighton in his office on June 25, 1963 and whether on June 25, 1963, in a telephone conversation with Mr. Leighton, Johnson said that he was not going to remove a twenty-four hour surveillance of FBI agents from the residence of Sam Giancana.
 
 
 45
 However, as to specification IV, Johnson testified that, due to his misunderstanding, he gave a negative answer to the following question put to him as a witness:
 
 
 46
 'Q. Mr. Johnson, you were in the courtroom a moment ago, were you not, when the witness Carmen Skembare displayed to the Court the movie film taken on June 25, 1963, at and around the premises of 1147 South Wenonah Street, Village of Oak Park, were you not?'
 
 
 47
 He stated that as a matter of fact he was present in the courtroom when the film was shown. Nevertheless he reaffirmed his refusal to answer questions as to whether he recognized in the film the faces of anyone he knew.
 
 
 48
 This film was produced at the hearing in the district court by Skembare, the photographer. Thus it was not in the possession of, or a part of, the files of the Department of Justice. In this state of the record it is apparent that Order 260-62 had no application to this film.
 
 
 49
 As to specification V, involving the films known as exhibits 2-4 inclusive, the evidence shows that they were produced by other witnesses called by plaintiff. There is no evidence that they were ever in the possession of, or in the files of, the Department of Justice. Nevertheless Johnson, when shown these exhibits and asked if he recognized them, declined to answer under Order 260-62. When the court asked him whether these films were at any time in the files of the Department of Justice or of the United States attorney, he likewise declined to answer under said order.
 
 
 50
 Inasmuch as it does not appear from the record that these exhibits were ever in the files of the Department of Justice, we hold that Johnson was in contempt in refusing to answer questions pertaining thereto.
 
 
 51
 Nor do we believe that Johnson was justified in relying upon the teletyped message from the Attorney General insofar as it specifically instructed him not 'to give any testimony in this matter.' The Attorney General's authority to require a refusal to testify by one of his subordinates when called as a witness in the district court is limited to those areas defined by statute or departmental regulation, such as Order 260-62. We cannot justify the assertion of a general and unlimited authority of a departmental head to instruct a subordinate not to give any testimony in a certain case pending in a district court. The very reason that administrative regulations are required is inconsistent with the idea that the head of any department of government may issue ad hoc decisions when, in his sole discretion, they are required.
 
 
 52
 In more highly developed societies the law becomes chiefly of special enactment or statutory origin, and the authority imposing the sanction is the sovereign state.
 
 
 53
 We know of no basis for holding that, in the absence of such a sanction as 5 U.S.C.A. 22, any person, official or otherwise, possesses authority to direct any other person, official or otherwise, not to testify when called as a witness before a United States district court.
 
 
 54
 For these reasons, the order from which this appeal has been taken is affirmed.
 
 
 55
 Affirmed.
 
 
 56
 SWYGERT, Circuit Judge (concurring).
 
 
 57
 I concur in affirming the order of commitment from which this appeal is taken and in Judge Schnackenberg's opinion covering specifications II, III, IV, and V. I do not concur, however, in his conclusion relating to specification I that agent Johnson was protected by Department of Justice order No. 260-62.
 
 
 58
 The agent was asked if he had received the original of a telegram that had been sent to him.[1] To answer the question did not require production of documents or information from the files of the department. The question concerned a matter of which defendant had personal knowledge.
 
 
 59
 Moreover, Johnson's appearance on the witness stand was in the capacity of an adverse party under Fed.R.Civ.P. 43(b); not as an agent testifying on behalf of the Federal Bureau of Investigation.
 
 
 60
 Although order No. 260-62 is a legal exercise of executive authority to protect the files of the department, it should not be used, as attempted here, to escape responsibility for conduct that is allegedly violative of legal rights. One element that is basic to our American system of justice is that the Government and its officials are under law. In my opinion the legal bulwark that protects our liberties would be breached if the district judge's rulings were not affirmed in all respects.
 
 
 61
 KILEY, Circuit Judge (dissenting).
 
 
 62
 I dissent. Today we are filing an opinion in Giancana v. Johnson, 7 Cir., 355 F.2d 366, vacating the judgment of the district court for lack of jurisdiction. The lack of the essential showing that there is 'in controversy * * * the sum or value of $10,000' precludes the court's jurisdiction. It follows that the court had no power in that unauthorized hearing which had no legal foundation, to 'lawful(ly) * * * order * * * or command' defendant to answer questions, and to hold him in contempt for refusal to answer.[1] In Abbott v. Eastern Massachusetts St. Ry. Co., 19 F.2d 463 (1st Cir. 1927), a criminal contempt order fell with the invalid injunction in a diversity case because the complaint 'did not allege' diversity and the jurisdictional amount.
 
 
 63
 The district court has general jurisdiction over 'federal questions.' But a 'federal question' is presented only in a suit 'wherein the matter in controversy exceeds the sum or value of $10,000, * * * and arises under the Constitution, laws, or treaties of the United States.' Thus, in the absence of the showing of the amount in controversy, there is no 'federal question' presented and no jurisdiction.
 
 
 64
 Since the court had no jurisdiction to entertain plaintiff's suit it had no power to punish for contempt. Ex parte Rowland, 104 U.S. 604, 612, 26 L.Ed. 861 (1881), Ex parte Fisk, 113 U.S. 713, 718, 5 S.Ct. 724, 28 L.Ed. 1117 (1885), In re Sawyer, 124 U.S. 200, 221-222, 8 S.Ct. 482, 31 L.Ed. 402 (1888), United States v. Thompson, 319 F.2d 665, 668 (2d Cir. 1963).
 
 
 65
 The contempt order before us is not for violating an injunction to preserve the status quo: to enable the district court to determine whether it had jurisdiction as in United States v. United Mine Workers, 330 U.S. 258, 289-295, 67 S.Ct. 677, 91 L.Ed. 884 (1947); or to permit needed argument on the question of jurisdiction as in United States v. Shipp, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319 (1906). Neither is it a case of a mere erroneous order. In my opinion the contempt order is void for want of jurisdiction, and this court has the duty to raise the question itself. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 187, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).
 
 
 
 [1]
 The record before us shows that the district court ordered Johnson released upon his own recognizance pending this appeal
 
 
 [2]
 Order No. 260-62-- REGULATIONS RELATING TO PRODUCTION OR DISCLOSURE OF MATERIAL OR INFORMATION IN FILES
 By virtue of the authority vested in me by section 161 of the Revised Statutes (5 U.S.C. 22) and section 2 of Reorganization Plan No. 2 of 1950 (64 Stat. 1261), I hereby prescribe the following regulations relating to the production or disclosure of material or information in the files of the Department of Justice:
 Section 16.1 Response to subpoena or order for production or disclosure. Whenever a United States Attorney or any other officer or employee of the Department of Justice is served with a subpoena or order for the production or disclosure of material or information contained in the files of the Lepartment of Justice, the United States Attorney, or such other attorney as may be designated, shall appear with the person upon whom the demand is made and inform the court or other issuing authority that such person is not authorized to produce or disclose the material or information sought. Time shall be requested within which to refer the subpoena or order to the Attorney General, and the United States Attorney, or other attorney designated, shall refer the court to the regulations in this part. Advice as to such subpoena or order shall be given immediately to the Attorney General without awaiting court appearance.
 Section 16.2 Action to be taken on adverse ruling by the court. In the event the court declines to defer a ruling until instructions from the Attorney General have been received or in the event the court rules adversely on a claim of privilege asserted under instructions of the Attorney General, the person upon whom such demand is made shall, pursuant to the regulations in this part, respectfully decline to produce the material or information sought. United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417.
 This order supersedes Order No. 3229 (Revised) dated January 13, 1953.
 
 
 [1]
 A copy of the telegram was shown to the witness at the time the question was asked
 
 
 [1]
 'A court of the United States shall have power to punish by fine or imprisonment * * * such contempt of its authority, and none other, as--
 '(3) Disobedience or resistance to its lawful * * * order, * * * or command.' 62 Stat. 701 (1948), 18 U.S.C. 401 (1950).