(a) Except as provided in . . . [inapplicable section of ERISA]:

(1) *A fiduciary* with respect to a plan *shall not cause the plan to engage in a transaction, if he knows* or should know *that such transaction constitutes a direct or indirect—*

\*     \*     \*     \*     \*     \*

(D) *transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan. . . .*

29 U.S.C. § 1106(a)(1)(D) (emphasis supplied).

Plaintiff asserts that the "bad boy" clauses of the CBS plan and the Employee Death Benefit Agreement permit defendant Falstaff to use terminated benefits for its own gain in violation of these sections of ERISA and are therefore void.

The parties direct much of their argument to the effective dates of these sections of ERISA and whether they applied to the transactions in this case. Even assuming, however, that defendant Falstaff used the retained funds for its own benefit, and that such use is prohibited by these sections of ERISA, the Court finds that the "bad boy" clauses of the contracts are not void and that plaintiff is not, therefore, entitled to the funds.

The same CBS plan before this Court has been held to be an employee welfare benefit plan under section 3(1) of ERISA, 29 U.S.C. § 1002(1). (McClellan affidavit); *Dependahl v. Falstaff Brewing Corporation,* 653 F.2d 1208, 1213–14 (1981). Cases holding that an employee terminated for cause is entitled to benefits despite contractual "bad boy" clauses, however, have done so in the context of *pension* plans and by applying the vesting provisions of ERISA, 29 U.S.C. §§ 1051–1061. *See, e.g., Winer v. Edison Brothers Stores Pension Plan,* 593 F.2d 307

(8th Cir. 1979). These vesting provisions, however, which limit the situations in which an employee can forfeit pension benefits, are inapplicable to employee welfare benefit plans. 29 U.S.C. § 1051(1).[1] Plaintiff has not shown the Court any express or implied provision of ERISA similarly prohibiting the forfeiture of benefits under employee welfare benefit plans. The sections of ERISA upon which plaintiff relies only limit the use of the assets of the plan and are silent on the question of forfeiture. Accordingly, the Court finds that even if the uses to which the funds were put are violative of ERISA, that violation does not void the contractual forfeiture of the insurance benefits.

There is no genuine issue of material fact that the benefits were forfeitable under the contracts if Gutting was fired for cause, nor that Gutting was fired for cause. Finding as a matter of law that the forfeiture provisions of the contract were not void under sections 403(c)(1) and 406(a)(1)(D) of ERISA, 29 U.S.C. §§ 1103(c)(1) and 1106(a)(1)(D), defendant's motion for summary judgment will be granted, and plaintiff's motion for summary judgment will be denied.

All other pending pretrial motions will be denied as moot.

UNITED STATES of America, Plaintiff,

v.

Owen CARRON, Patrick J. Morrell, Daniel Morrison, and Helen McDonald, a/k/a Helen C. Quigley, Defendants.

No. CR–82–14.

United States District Court, W. D. New York.

June 1, 1982.

---

1. Plaintiff does not assert that the CBS plan is a pension plan under 29 U.S.C. § 1002(2).

Salvatore R. Martoche, U. S. Atty., Buffalo, N. Y. (Jack S. Penca, Asst. U. S. Atty., Buffalo, N. Y., of counsel), for plaintiff.

James P. Harrington, Buffalo, N. Y., for defendant Owen Carron.

Boreanaz, NeMoyer & Baker, Buffalo, N. Y. (Edgar C. NeMoyer, Buffalo, N. Y., of counsel), for defendant Patrick J. Morrell.

Diebold, Bermingham, Gorman, Brown & Bridge, Buffalo, N. Y. (Mark J. Mahoney, Buffalo, N. Y., of counsel), for defendant Daniel Morrison.

Moot, Sprague, Marcy, Landy, Fernbach & Smythe, Buffalo, N. Y. (Frank J. Clark, III, Buffalo, N. Y., of counsel), for defendant Helen McDonald.

CURTIN, Chief Judge.

Defendants Owen Carron and Daniel Morrison stand charged with violation of 18 U.S.C. § 1001. The government contends that the defendants, Irish nationals, made false statements to a United States Immigration Inspector while attempting to enter the United States after their request for lawful entry was denied by the Department of State. The defendants have raised the defense of selective prosecution. At this time, they have moved for a hearing on the issue of prosecutorial vindictiveness and

seek to obtain discovery from the government.

The discovery requests are quite broad. Defendants seek statistical data regarding the granting and denial of visa applications, the number of persons attempting to enter the country illegally, and data pertaining to indictment and conviction of such individuals. Additionally, defendants' request records, orders, regulations, and communications issued by the Department of State and the Immigration & Naturalization Service regarding the defendants and the decision to prosecute them.

The United States opposes defendants' motions. In its responsive papers, the government argues primarily that the defendants have not demonstrated that they have been treated differently from other aliens attempting unlawful entry and are thus not entitled to a hearing or to the discovery. Further, the United States asserts that many of the documents are privileged and are exempt from discovery pursuant to the Federal Rules of Criminal Procedure, Rule 16(b)(2), and 8 U.S.C. § 1202(f).[1]

█ The parties agree that the defendants' burden in establishing a defense of selective or discriminatory prosecution is a heavy one, and that the issue is governed by the standards enunciated by the United States Court of Appeals for the Second Circuit in the case of *United States v. Berrios*, 501 F.2d 1207 (1974). In that case, the court stated that the defendant must make a *prima facie* showing:

(1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's dis-

criminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

*Id.* at 1211. Once the defendant satisfies this burden of proof, the burden shifts to the government, which must justify its actions in singling out a particular person or persons for prosecution.

█ Examination of the affidavits and supporting papers filed by the defendants demonstrate that, as of this time, they have not established a *prima facie* case of selective prosecution. Defendants have submitted statistical data showing that, in proportion to the number of persons who are indicted for immigration violations, there are few indictments and fewer convictions for violations of 18 U.S.C. § 1001. The defendants state that:

[u]pon information and belief, the indictment in a case such as this for felonies is an extraordinary action by the United States Attorney's Office where the common practice is to decline prosecution and the administrative procedure of excluding the potential defendant from the country is the accepted and normal procedure.

Defendants' *Motion for Discovery and Hearing* at 10.

Defendants' conjectures, however, are supported by little hard evidence. The data submitted are scanty and are far from dispositive of the issue. Numerous inferences can be made from the low indictment and conviction percentages. Defendants have not produced sufficient evidence to show that individuals arrived at the border, made false statements to United States officials, and were not prosecuted.

---

1. 8 U.S.C. § 1202(f) states:

The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States, except that in the discretion of the Secretary of State certified copies of such records may be made available to a court which certifies that the information contained in such records is needed by the court in the interest of the ends of justice in a case pending before the court.

■ It is clear, then, that the defendants have not presented sufficient evidence to shift the burden of justification to the government. The question remains, however, whether they have made a sufficiently strong showing of discriminatory prosecution to warrant a hearing and to entitle them to discovery from the government. Defendants have a lesser burden to carry when seeking discovery to aid them in proving the elements of a *prima facie* case of selective prosecution. The defendants must demonstrate "some evidence tending to show the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of these elements." *United States v. Berrios*, 501 F.2d at 1211–12. That is, the defendants must make "some initial showing that there is a colorable basis for [their] contention." *United States v. Berrigan*, 482 F.2d 171, 177 (3d Cir. 1973); *see also Attorney General of the United States v. Irish People, Inc.*, 502 F.Supp. 63 (D.D.C.1980); *United States v. Washington*, Cr–81–375 (D.D.C. Feb. 23, 1982).

The United States concedes that a lesser showing of the elements of the defense will suffice to entitle the defendants to discovery and a hearing. The government nevertheless continues to resist the motions on the ground that the defendants have not come forward with *any* evidence tending to show selective prosecution. Additionally, during oral argument on the motions which took place on May 26, 1982, the government affirmed its contention that the majority of the documents are privileged and not subject to production.

■ The court cannot accept the government's argument that the defendants' claim is completely devoid of support. Defendants have submitted newspaper articles and other documents containing statements from United States officials which, if true, could possibly indicate a bias against these individuals and a desire to prosecute them for impermissible reasons. Upon examination of these submissions, the court cannot say as a matter of law that defendants do not have a colorable basis for their defense. Instead, the court holds that defendants have established their entitlement to some discovery to support their defense.

Delicate issues are involved in fashioning the appropriate relief. The court must balance the defendants' rights to a fair trial against the government's legitimate interest in protecting privileged and confidential information. In view of the importance of these issues, we shall proceed cautiously in ascertaining the defendants' needs and the amount of discovery to which they are entitled. Accordingly, the court holds that, at this stage of the proceedings, defendants have demonstrated sufficient evidence to require the United States to provide various non-privileged information. Specifically, the court finds that the government shall produce for inspection such data as it may possess pertaining to the statistical data requested by the defendants in paragraphs 13–17 of their discovery request.

During oral argument, the Assistant United States Attorney representing the government was unable to state whether such statistical data are currently in existence or could easily be compiled. The government shall make efforts to obtain the data and deliver such data to the defendants for inspection. The parties shall meet with the court on June 4, 1982, at 9 a.m. At that time, the United States Attorney shall be ready to explain what information is available and how long it will take to gather and file.

So ordered.