ATTORNEY GENERAL OF the UNITED STATES, Plaintiff,

v.

The IRISH PEOPLE, INC., Defendant.

Civ. A. No. 76–1518.

United States District Court,
District of Columbia.

Aug. 8, 1980.

Brian K. Ahearn, U.S. Dept. of Justice, Internal Security Section, Crim. Div., Washington, D.C., for plaintiffs.

Mark G. Barrett, New City, N.Y., Charles S. Sims, American Civil Liberties Union, New York City, Mark H. Lynch, American Civil Liberties Union, Richard Ben–Veniste, Washington, D.C., for defendants.

## MEMORANDUM OPINION

FLANNERY, District Judge.

*Introduction*

This case comes before the court on the defendant's motion to dismiss. This is a civil enforcement action brought pursuant to the Foreign Agents Registration Act (FARA), 22 U.S.C. §§ 611–618. The Attorney General seeks an injunction compelling the defendant, a New York corporation that publishes a weekly newspaper entitled *The Irish People*, to register as the agent of a foreign principal and otherwise to comply with FARA.

In its answer to the complaint the defendant raised several defenses, one of which is that the defendant was unlawfully singled out for prosecution under FARA because of governmental hostility to its editorial policies. The defendant then sought discovery of government materials relevant to this defense, and the government resisted this discovery, asserting its state secrets privilege. After. *in camera* examination of the documents, this court by order of July 13, 1979, upheld the government's claim of privilege. The defendant now moves to dismiss, contending that the government must choose between prosecuting its case and withholding materials critical to a dispositive defense.

Additionally, the defendant contends that it is entitled to dismissal under Fed.R.Civ.P. 37 on account of the government's refusal to produce some 250 pages of documents that the defendant is allegedly entitled to discover. The plaintiff responds that the documents to which the defendant refers do not exist and never existed, although in a letter of June 16, 1978, plaintiff's counsel

indicated that a claim of executive privilege was being asserted with regard to "approximately 250 pages of material" that have never been produced.

█ The court rejects the defendant's motion under Fed.R.Civ.P. 37: the plaintiff's single reference to some 250 pages is an inadequate basis for assuming that it is unlawfully concealing materials relevant to the case. With respect to the defendant's forced choice theory, however, the court rules in favor of the defendant: the government must turn over the documents sought or have its case dismissed.

*Discussion*

█ Under the due process clause of the fifth amendment, federal defendants enjoy protection against discriminatory prosecution. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Washington v. United States*, 401 F.2d 915 (D.C.Cir. 1968). *See also Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (under the fourteenth amendment state defendants enjoy protection against discriminatory prosecution). Prosecution is not unlawful simply by virtue of selectivity, however. *Oyler v. Boles*, 368 U.S. 448, 7 L.Ed.2d 446, 82 S.Ct. 501, 506 (1962) ("[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation"). Rather, to be unlawful the selectivity must be predicated on some unjustifiable standard, *id.*, and a person's exercise of first amendment rights is precisely such an unjustifiable standard. *United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972) (the defendant is "entitled to an acquittal if his evidence proved that the authorities purposefully discriminated against those who chose to exercise their First Amendment rights").

█ Prosecutions being presumptively legal, Comment, *The Right to Nondiscriminatory Enforcement of State Penal Laws*, 61 Colum.L.Rev. 1103, 1119–20 (1961), bare assertion of discriminatory prosecution is not enough to entitle a party to discovery regarding that defense. Rather the party seeking to raise that defense must make some preliminary showing of entitlement to raise it.

The nature of the required showing is unsettled. Some cases speak in terms of a two-part "prima facie case." *See e. g., United States v. Scott*, 521 F.2d 1188, 1195 (9th Cir. 1975) (involving alleged failure to file income tax forms):

In order to prevail in this allegation appellant must bear the burden of proving at least a prima facie case. This requires that appellant first demonstrate that others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted. Secondly, appellant must show that his selection was based on an impermissible ground such as race, religion, or his exercise of his first amendment right to free speech.

The present case does not lend itself easily to such analysis, however, because of the manifest difficulty of finding others "similarly situated" in the sense of voicing strong and regular opposition to the foreign policy (regarding Ireland) of a major United States ally (Great Britain).

Other cases present general analysis more suitable for the situation at hand. Some speak in terms of "reasonable doubt" regarding the legitimacy of the prosecution. *See, e. g., United States v. Falk*, 479 F.2d 616, 620–21 (7th Cir. 1973) (en banc), in which the court stated that the burden shifts to the government to justify singling out a given party for prosecution when that party "alleges intentional purposeful discrimination and presents facts sufficient to raise a reasonable doubt about the prosecutor's purpose. . . ." Other cases speak in terms of the establishment of a "colorable basis" for the defense of discriminatory prosecution. *See, e. g., United States v. Berrigan*, 482 F.2d 171 (3rd Cir. 1973), in which the court stated that the defendant must make "some initial showing that there is a colorable basis for the contention. . . ." *Accord, United States v. Peskin*, 527 F.2d 71, 85–86 (7th Cir. 1975), in which the court stated that what is necessary for "prima facie entitlement to a hearing" on the issue

of discriminatory prosecution are facts alleged which colorably showed that the prosecution was undertaken with the motive to suppress" protected expression. Still other cases inquire into whether "enough facts are alleged to take the question past the frivolous stage," *United States v. Oaks*, 508 F.2d 1403, 1404 (9th Cir. 1974). And in a case similar to the one at hand the United States Court of Appeals for the Second Circuit stated that before a defendant may obtain mandatory discovery of documentary evidence related to the selective prosecution defense, "we would first require *some evidence tending to show* the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of these elements." *United States v. Berrios*, 501 F.2d 1207, 1211–12 (2d Cir. 1974).

■ These tests might vary in their stringency, but in this case the court is satisfied that regardless of the test applied—reasonable doubt, colorable basis, beyond frivolous, evidence tending to show essential elements—the defendant has carried his burden. Particularly significant is the January 30, 1980 deposition of Mr. Dennis Dickson, a former F.B.I. Legal Attache stationed with the American Embassy in London. Dickson indicated that the United States Department was at one time "getting various requests from the Government of Ireland as to what the U.S. was doing to prosecute individuals that were shipping guns, ammunition, that was in violation of the Registration Act...." Dickson Deposition at 50. He confirmed that at a meeting convened by the State Department, *id.*, apparently on September 26, 1973, *id.* at 47, there was discussion of means of alleviating *political* as well as financial and military support

furnished by Irish militants by U.S. citizens, *id.* at 52–53. In view of these and other statements in the Dickson Deposition, it would be unreasonable to deny the requested discovery.

The defendant having established entitlement to discovery relating to the defense of selective prosecution, the next issue is whether the particular documents that the defendant seeks to discover are sufficiently related to that defense to justify compelling the government to release them.[1]

What the defendant seeks are documents indicating "when and whether unnamed agencies of the British or Irish governments had communications or discussions with American agencies, or officers, which might have resulted in, stimulated, or led to the intensification of the investigation by American agencies of these American citizens' activities on American soil and the substance of those communications." Second Reply Statement of Points and Authorities in Support of Defendant's Motion to Compel, p. 9. In order to determine whether these documents are in fact sufficiently related to the defense to justify their release, the court must determine preliminarily what standard of relevance should apply. The cases on point indicate that this standard is a liberal one. In *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 534, 97 L.Ed. 727 (1953), the Court stated, "The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which *might be material* to his defense." (Emphasis supplied.) In connection with this passage

1. The government also challenges the defendant's need for the documents in question, contending that "the Defendant has not even attempted to explore, let alone exhausted, the possible sources of the evidence...." Statement of Points and Authorities in Opposition to Defendant's Motion to Dismiss, p. 3. In its Statement of Points and Authorities in Support of Defendant's Motion to Dismiss, p. 11, the defendant replies that it has "attempted to obtain the requisite information by deposing two

former legal attaches attached to the American Embassy in London, and two State Department officers involved in the government's investigation of The Irish People ... during the relevant time period. However, in none of these depositions was defendant able to acquire the information sought in document production, and withheld on state secret grounds." The court is persuaded that the withheld documents are the only source of the information sought.

the *Reynolds* opinion cites *United States v. Andolschek*, 142 F.2d 503 (2d Cir. 1944), a criminal case in which the government sought to suppress confidential documents. There Judge Learned Hand commented, "Nor does it seem to us possible to draw any line between documents whose contents bears directly upon the criminal transactions, and those which may be only indirectly relevant." (Emphasis supplied.) [2]

Applying the standard of either *Reynolds* or *Andolschek*, the court must conclude that the documents sought to be discovered in this case are sufficiently related to the defense of selective prosecution to support their discovery. There is a manifest likelihood that documents reflecting communications between agencies of the Irish and British governments and agencies of the United States would shed considerable light on the existence *vel non* of at least one unlawful basis for the present prosecution. Indeed, as this court stated earlier in this case, "The defendant in the case *sub judice* has argued persuasively that proof of the existence of communications between agencies of the British or Irish governments and American agencies is crucial to its defense of selective prosecution...." Memorandum of July 13, 1979, p. 3.

The defendant having established entitlement to discovery relating to the defense and having established the relevance of the disputed documents to the defense, the remaining question is whether the government may prosecute the case while at the same time withholding the disputed documents. Both logic and precedent answer this question in the negative. It would be inconsistent with the fundamental fairness required by due process to allow the government to assert the defendant's guilt and then deny it the materials that might serve to exculpate it. *See United States v. Reynolds, supra; United States v. Andolschek, supra.* In the latter case, Judge Hand stated,

While we must accept it as lawful for a department of the government to suppress documents, even when they will help determine controversies between third persons, we cannot agree that this should include their suppression in a criminal prosecution, founded upon those very dealings to which the documents relate, and whose criminality they will, or may, tend to exculpate. So far as they directly touch the criminal dealings, the prosecution necessarily ends any confidential character the documents may possess.... *The government must choose*; either it must leave the transactions in the obscurity from which a trial will draw them, or it must expose them fully.

142 F.2d at 506 (emphasis supplied).

For these reasons, the government may not continue to prosecute this action while withholding the documents that the defendant seeks to discover.

2. Although the present case is a civil enforcement action, the defendant's interests are similar to those of a defendant in a criminal prosecution, because FARA provides for criminal sanctions for failure to comply with its requirements. 22 *U.S.C.* § 618.