**ATTORNEY GENERAL OF the UNITED STATES, Plaintiff,**

v.

**The IRISH PEOPLE, INC., Defendant.**

**Civ. A. No. 76–1518.**

United States District Court,
District of Columbia.

July 6, 1984.

Charles S. Sims, American Civil Liberties Union, New York City, Helene M. Freeman, Parcher & Herbert, New York City, Mark H. Lynch, Susan W. Shaffer, American Civil Liberties Union Project on National Security and Civil Liberties, Washington, D.C., for defendant.

Brian K. Ahearn, Dept. of Justice—Criminal Division, Washington, D.C., for plaintiff.

## MEMORANDUM

FLANNERY, District Judge.

This matter comes before the court on cross-motions for summary judgment. The government brought this action to require the defendant, a New York corporation that publishes *The Irish People*, a weekly newspaper, to register as the agent of a foreign principal under the Foreign Agents Registration Act of 1938, as amended, ("FARA"), 22 U.S.C. 611, *et seq.* The government claims that *The Irish People* is an agent of the Irish Northern Aid Committee, ("INAC"), which in turn, is the registered agent of the Irish Republican Army. *See Attorney General v. INAC*, 530 F.Supp. 241 (S.D.N.Y.1981), *aff'd* 668 F.2d 159 (2d Cir.1982).

## DISCUSSION

### I. Statutory Requirements.

FARA requires that all persons acting as agents of foreign principals must file a registration statement with the Attorney General. 22 U.S.C. § 612(a). The key section of the Act, for the purposes of this court's determination of the motions at bar, is the definition of the term "agent of a foreign principal." *Id.* at § 611(c). That term includes:

> any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person—
>
> (i) engages within the United States in political activities for or in the interests of such foreign principal;
>
> (ii) acts within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal;
>
> (iii) within the United States solicits, collects, disburses, or dispenses contributions, loans, money, or other things of value for or in the interest of such foreign principal.

*Id.* The requirements of the Act relevant to defendant can be divided into three categories. Initially, the government must prove that defendant acted at the order, request, or under the direction or control of an entity. Secondly, that entity must be a foreign principal. Finally, defendant must engage in the alleged political activity for, or in the interests of the foreign principal. The second requirement is not in dispute in the present case. INAC is a registered agent of the IRA. The court will consider the remaining requirements in turn, but first it must address the standard to be applied to the evaluation of the motions at bar.

Plaintiff argues that because the application of FARA affects First Amendment rights, the government must make a compelling factual showing and establish its case by clear and convincing evidence.

Although this argument might be appropriate in a discussion of proposed jury instructions, it has no place in the consideration of a motion for summary judgment. In fact, the government must meet the more exacting standard established by the Federal Rules of Civil Procedure. As stated in the rules, the moving party must establish that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). In the context of a motion for summary judgment the court must not resolve factual differences, but can only determine, giving every reasonable inference to the opponent of the motion, whether any factual differences exist. *See, e.g., Exxon Corp. v. Federal Trade Commission,* 663 F.2d 120 (D.C.Cir. 1980). The court must now examine the record in light of the above standard.

■ In order to meet the first requirement of proving that defendant is an agent of INAC some type of relationship between the two parties must be proved. Defendant argues that plaintiff must prove that INAC directed *and* controlled *The Irish People.* This, however, directly contradicts the plain language of the statute. The requirements of the statute are stated in the disjunctive. As the United States Court of Appeals for the Second Circuit held in examining the same statute, the relationship required by the Act need not meet the Restatement standard.[1] *Attorney General v. INAC, supra,* 668 F.2d at 161. The Restatement focuses on control, but that is only one of the possible connections that the government need prove between INAC and *The Irish People.* The Second Circuit announced a more lenient standard in the above-cited case. *Id.* The court stated that the real test was whether the action in question was undertaken at the "request" of the foreign principal.[2] *Id.*

The court now turns to an examination of the record in this case to determine the relationship, if any, between INAC and *The Irish People.*

## II. The Government's Evidence.

■ The government has attempted to prove the requisite relationship primarily by establishing an identity in the managing personnel and resources of INAC and *The Irish People.* The evidence submitted by the government in support of its motion falls into three basic categories. The first is defendant's answers to interrogatories. The second is the affidavit submitted by Brian K. Ahearn, an attorney with the Registration Unit, Internal Security Section, Criminal Division of the Department of Justice. The third is documents that were obtained through a search of INAC's files. There is no dispute that the evidence in the first category is admissible. Defendant claims that Ahearn has no personal knowledge of the information contained in his affidavit and, therefore, that it is inadmissible. It is beyond dispute, however, that Ahearn has been deeply involved with INAC's compliance with FARA since 1971. The majority of the relevant material in Ahearn's affidavit was ascertained from his personal review of INAC's registration statements. It was on this basis that the district court in *Attorney General v. INAC, supra,* admitted Ahearn's affidavit. 530 F.Supp. at 252. This court has not considered the information in Ahearn's affidavit that could not have been obtained from a review of the registration statements and other undisputably admissible evidence. This court finds, however, that to the extent it is based on this undisputably admissible evidence, it can be con-

---

1. *See* Restatement (Second) of Agency § 1 (1958).

2. The court limited the scope of the term "request" when it stated that:
 We caution that this word is not to be understood in its most precatory sense. Such an interpretation would sweep within the statute's scope many forms of conduct that Congress did not intend to regulate. The exact perimeters of a "request" under the Act are difficult to locate, falling somewhere between a command and a plea. Despite this uncertainty, the surrounding circumstances will normally provide sufficient indication as to whether a "request" by a "foreign principal" requires the recipient to register as an "agent." 668 F.2d at 161. The circumstances surrounding INAC and *The Irish People* are examined, in detail, below.

sidered. Because this court finds that the information contained in the first two categories of evidence is sufficient to support the government's motion for summary judgment, it will reserve until later in this memorandum a discussion of the admissibility of the third category of evidence.

■ Plaintiff's answers to interrogatories establishes the identity of several of the managing persons or officers of *The Irish People*. Michael Flannery, Jack McCarthy, Robert McCann, and Matthew Higgins, until his death, have, or have had, signature power over the defendant's bank accounts. Furthermore, McCann and Martin Galvin are, and have been editors of *The Irish People*. McCann signed the lease for the defendant's present quarters as Secretary of that organization.[3]

The answers to interrogatories also establish that INAC and the defendant shared the same office and other facilities. Specifically, between February 23, 1975 and March 1, 1976, the defendant's office was located at the headquarters of INAC. Defendant paid no rent to INAC for this office. During this time period defendant used the same telephone number as INAC.[4] It is difficult, therefore, to separate the defendant from INAC during this period. They shared officers, offices, and telephone numbers. In addition, defendant received a significant amount of financial support from INAC. Between January, 1975 and January, 1976, the defendant received in the area of $45,000 from INAC. This support did not end in 1976. From 1977 through 1982 the defendant received in excess of $130,000.00 from INAC.

Defendant does not deny most of the facts recited above. With regard to the coincidence of officers in the two organizations, defendant maintains that people who are involved in ethnic politics ordinarily volunteer for more than one organization. This does not refute, however, plaintiff's contention that the officers, or people who run INAC exert some degree of control over *The Irish People*. Defendant has also stressed that most or all of the people who work at *The Irish People* are volunteers. There is no distinction made by FARA, however, between paid and unpaid agents. There is no question of fact, therefore, that the leaders of INAC in the United States also make substantial contributions to and have substantial control over *The Irish People*. This without more might be enough to satisfy the first prong of the statutory definition of a foreign agent. As noted above, however, this is far from the only fact that the government offers in support of its motion for summary judgment. Defendant does not deny, and offers no explanation for the facilities of INAC that were offered gratuitously to defendant.

■ Defendant has two responses to plaintiff's argument that it received substantial subsidies from INAC. Initially, it argues that the money received from INAC was approximately equal to the value of the advertisements provided by defendant to INAC.[5] Defendant also argues that Woodward & Lothrop might be a substantial advertiser in the *Washington Post,* but that does not mean that the Post is an agent of Woodward & Lothrop's. Defendant's logic is impeccable, as far as it goes.

---

**3.** This document is attached to the Government's motion in Exhibit 2.

**4.** Defendant does not dispute these facts in its Statement of Genuine Issues, although Galvin states that the offices of the two organizations are, in fact, separate. Galvin Affidavit at ¶ 15. Initially, Galvin does not state that *The Irish People,* as opposed to the INAC, pays the rent. Furthermore, he does not deny that at one time the organizations shared offices.

**5.** Accepting defendant's assertion as true, it only ·tells half of the story. INAC does not pay *The*

*Irish People* in accordance with the advertising that it places in the newspaper. Defendant admits that INAC pays for *The Irish People's* operational deficit. *See* Galvin Affidavit at ¶ 12. This has the effect of keeping the newspaper solvent regardless of the advertisements placed in it by INAC, and the coincidence that the value of the advertisements are approximately equivalent to the money paid by INAC to *The Irish People* does not alter this effect. This arrangement is much different from the situations to which defendant analogizes.

If, in addition to being a substantial advertiser in the *Post*, however, Woodward & Lothrop had the same Board of Directors as the *Post*, and provided the *Post* with offices and telephone facilities free of charge, then the *Post* might well be found to be the agent of Woodward & Lothrop.[6]

■ This is the substance of the government's case.[7] Defendant argues, in rebuttal, that the government's proof is stale. It asserts that the majority of the government's evidence is at least eight years old. Although plaintiff's evidence is not as up to date as would be desirable, this is not a fatal flaw in the government's case.[8] Defendant argues that the term "officials" has no significance under FARA, however, it does not deny that the people listed as officials by the government are still integrally involved in INAC. It does not deny that these people, whether they are volunteers or not, exert a controlling influence over INAC. It does not rebut the government's proof that Flannery, McCarthy and McCann have signature power over defendant's bank accounts. This alone proves that these people exerted a certain degree of control over defendant. Furthermore, the payments that defendant received from INAC were much more recent than eight years. There is sufficient undisputed evidence, therefore, that defendant is currently acting at the request of INAC to satisfy the requirements of FARA.

■ The second prong of the government's case is that defendant engaged in political activities for or in the interests of INAC. This issue is clearly not totally independent of the issue of control. It is unlikely that the people who control *The Irish People* as well as the INAC, would allow more than isolated instances where the actions of the newspaper were contrary to the interests of INAC. A brief review of the product of *The Irish People* confirms this conclusion. Although the mere coincidence of editorial views would not be sufficient to satisfy the requirements of FARA, it sheds light on the question of whether the alleged agent was acting on behalf of the principal. In the present case it is clear that *The Irish People* has been published on behalf of INAC and the IRA.

III. Additional Exhibits

A. Contents

The government has submitted a group of documents obtained from the files of INAC. These documents leave no doubt that *The Irish People* is controlled by and operated on behalf of INAC. A letter on INAC stationary, signed by McCarthy, McGowan, and Flannery, dated May 31, 1974, refers to *The Irish People* as "our weekly paper." A 1976, handwritten letter from Higgins to McCarthy concludes:

> We can't let the paper collapse without notice to our people at home (*as they are paying for it*) and I therefore have drawn check # 2401 which I will have at

6. Defendant's argument that subsidies alone are not sufficient to prove the necessary relationship under FARA, H.R.Rep. No. 1470, *reprinted in* 1966 U.S.Code Cong. & Ad.News 2397, 2401, suffers from the same flaw. It is a valid statement, but it has limited applicability to this case. It ignores a combination of other facts that the government has proved and defendant has not disputed, that point to the conclusion that an agency relationship exists.

7. The government also argues that there is a coincidence of editorial views between INAC and *The Irish People*. This is not determinative of the agency issue, although it may be relevant to a determination of whether defendant acted on behalf of INAC, an issue discussed below. *Cf. Viereck v. United States*, 318 U.S. 236, 240–41, 63 S.Ct. 561, 563, 87 L.Ed. 734 (1943).

8. The situation at bar is identical to that in *Attorney General v. INAC,* in which the court stated:

> Although ... many of the exhibits before this Court are not very recent, defendant presents neither legally persuasive arguments nor any "concrete particulars" of fact to raise a genuine issue as to defendant's continuing agency relationship with the IRA.

530 F.Supp. at 259. The affidavits submitted by the defendant by their workers who state that neither they nor the newspaper are the agents of the INAC lack the particularity required to refute the concrete proof submitted by the government. Instead they represent legal conclusions that do not raise a factual issue.

the "People" office this (Sunday) evening.

(emphasis added). Perhaps the most revealing document is a letter dated December 1, 1977, from McCarthy, Flannery, and Higgins to The Trustees of the Boston Unit of the INAC. That letter states, while detailing the expenses of their office, "The only major expense is carried out at the direct command of our sponsors in Ireland, namely, helping to keep the 'Irish People' newspaper going."

Defendant does not deny the veracity of the contents of these documents. Instead it argues that the documents are inadmissible hearsay, and unauthenticated. It is to these arguments that this court now turns.

### B. Admissibility

■ Defendant is correct in asserting that these documents are hearsay. Plaintiff argues that the documents represent admissions and are admissible under Rule 801(d)(2)(A). There is, however, one crucial requirement missing before these documents can be classified as admissions: they must originate from a party. INAC is not a party to this suit. Evidence dealing with that organization is probative to the ultimate issue before the court, but nonetheless, it is not a party, and is incapable of making a party admission. Nor are these documents admissible as business records. *See* Fed.R.Evid. 803(6). There was no business duty to generate these letters. Furthermore, it is not clear that the other necessary foundations have been laid for admission under the business records exception to the hearsay rule.

■ This court believes that these documents are admissible under the catch-all exception to the rule against hearsay. Fed. R.Evid. 803(24). These letters are similar to business records in that they were produced in a business setting, and the authors had no reason to falsify their contents. To the contrary, these letters carry with them an aura of credibility similar to that of business records since these are, for the most part, internal letters. This court cannot imagine a motive that the author would have to fill such letters with untruths. The other elements of the exception are also met. The letters help to prove the agency relationship which is clearly a material issue in this case. The letters are more probative than any other evidence that the government could obtain. At least one of the authors of these letters, Higgins, is unavailable. Furthermore, these letters are very straightforward and the court does not believe that the testimony of the authors would necessarily be more probative on the issues contained in them than are the letters themselves. Finally, the court believes that the interests of justice would be thwarted by the exclusion of this extremely probative evidence. Defendant has been given sufficient notice of the government's intention to rely, in part, on these letters, and has had adequate opportunity to respond to them. All of the prerequisites of the Rule have, therefore, been satisfied and the documents contained in the government's Exhibit 1 as listed above are admissible. It should be noted once again, however, that the government would have sufficient undisputed evidence to prove its case even if these documents were not admitted.

### IV. Affirmative Defenses [9]

### A. Constitutionality of FARA

■ Defendant alleges that the application of FARA to it violates the First and Fourth Amendments. With regard to the First Amendment argument, defendant alleges that the requirement of a "pejorative" label on the newspaper violates its freedom of speech. The United States Court of Appeals for the District of Columbia Circuit was unanimous in stating that FARA is constitutional. *Attorney General v. Irish People,* 684 F.2d 928, 956, *cert. denied,* 459 U.S. 1172, 103 S.Ct. 817, 74

---

**9.** Defendant raised a host of affirmative defenses and counterclaims in its answer to plaintiff's complaint. It appears, however, that defendant has abandoned all but the arguments noted below.

L.Ed.2d 1015 (1982). Judge Wald spoke for the court when she stated that:

> FARA evenhandedly applied, has survived constitutional objections, and in fact serves first amendment values by supplementing the information that might otherwise be available to the public.

*Id.*[10] This theory was explained by Justice Black writing in dissent in *Viereck v. United States*, 318 U.S. 236, 251, 63 S.Ct. 561, 568, 87 L.Ed. 734 (1943):

> Resting on the fundamental constitutional principle that our people, adequately informed, may be trusted to distinguish between the true and the false, the bill is intended to label information of foreign origin so that hearers and readers may not be deceived by the belief that the information comes from a disinterested source. Such legislation implements rather than detracts from the prized freedoms guaranteed by the First Amendment.

*Id.* This court need not rehash the constitutional arguments that these courts considered and rejected. Indeed, defendant seems to concede that if there is substantial proof that *The Irish People* acts at the direction of INAC, then the First Amendment is satisfied, because there is a compelling government interest in the conduct of its foreign affairs. If this agency relationship is proved, then even defendant must agree that Congress has the power to force it to register under FARA. That relationship is proven in the case at bar by a wealth of undisputed evidence. The First Amendment is served through the notification of the public of the effect of this evidence.

 Defendant also argues that its Fourth Amendment rights are violated by FARA because the act subjects it to searches without the requisite probable cause. To the extent that defendant's argument has any merit it is premature. There has been no search of its files conducted pursuant to FARA. This court will not examine defendant's constitutional ar-

gument in a factual vacuum. Defendant has, at most, presented a potential violation of constitutional rights. This court will not anticipate such a violation. *See Communist Party v. Subversive Activities Control Board*, 367 U.S. 1, 71–72, 81 S.Ct. 1357, 1397, 6 L.Ed.2d 625 (1961).

**B. Selective Prosecution**

Defendant has asserted that FARA would violate the First Amendment because the action was instituted to harass and suppress its rights. This selective prosecution defense was explicitly reserved by defendant, and the court does not now pass on it. As defendant noted, this court must first make representative findings of fact with regard to the privileged documents before defendant can properly brief this issue. This court has withheld those findings until it disposed of the motions before it.

This court finds, therefore, that plaintiff is entitled to summary judgment in this case on all issues but the selective prosecution defense.

---

10. Judge Wilkey was more expansive in his discussion of FARA's constitutionality. *Id.* at 943.