ATTORNEY GENERAL OF the UNITED STATES, Plaintiff,

v.

THE IRISH PEOPLE, INC., Defendant.

Civ. A. No. 76–1518.

United States District Court, District of Columbia.

June 14, 1985.

---

**648**

Brian K. Ahearn, Dept. of Justice, Crim. Div., Washington, D.C., for plaintiff Attorney General of U.S.

Charles S. Sims, American Civil Liberties Union, New York City, Mark Lynch, Susan Shaffer, American Civil Liberties Union, Project on National Security and Civil Liberties, Washington, D.C., for defendant.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter is before the court on cross-motions for summary judgment on the remaining issue in this case, the defendant's selective prosecution affirmative defense. This issue was specifically reserved in this court's earlier Order, *see* Memorandum Opinion, July 6, 1984. The government brought this action to require the defendant, a New York corporation that publishes *The Irish People*, a weekly newspaper, to register as the agent of a foreign principal under the Foreign Agents Registration Act of 1938 as amended ("FARA"), 22 U.S.C. § 611 *et seq.* The government claims that *The Irish People* is an agent of the Irish Northern Aid Committee ("INAC"), which in turn, is the registered agent of the Irish Republican Army ("IRA"). *See Attorney General v. INAC,* 530 F.Supp. 241 (S.D.N.Y.1981), *aff'd,* 668 F.2d 159 (2d Cir.1982).

In its Memorandum Opinion filed on July 6, 1984 this court disposed of all but one of the issues in this case, 595 F.Supp. 114 (D.D.C.1984). In that opinion the court held that *The Irish People* was controlled by INAC, and that defendant has been

published on behalf of INAC and the IRA. Further, the court refused to find that this prosecution violated defendant's first and fourteenth amendment rights. The court specifically reserved discussion of the remaining defense, selective prosecution, until such time as the court could make representative findings of fact with respect to assertedly privileged documents important to the defense of selective prosecution. On August 31, 1984, this court filed its Memorandum of Fact and Conclusions of Law with respect to those documents. In its Second Motion for Summary Judgment defendant has, in effect, reopened the "control" question decided in this court's July 6, 1984 Opinion. Further, defendant argues that the plaintiff's attempt to have it register under FARA constitutes selective prosecution.

## I. Discussion.

### A. New Facts on the Issue of Control

In its second motion for summary judgment, defendant claims that "recently learned facts regarding the organization and legal status of The Irish People, Inc.— principally facts preceding this Court's July 6, 1984 opinion, but of which counsel was unaware—demonstrate that the Court's conclusion that the defendant is a 'foreign agent' within [FARA] cannot stand." Defendant's Memorandum of Law in Support of its Second Motion for Summary Judgment at 1 [hereinafter cited as Def. Mem.]. First, defendant explains that The Irish People as a corporation was dissolved by operation of law on December 31, 1980. Second, INAC officers Michael Flannery, Jack McCarthy, and Robert McCann have not had signature power over The Irish People's checking accounts since May, 1984. Third, since May, 1984 only Anne Egan, Edward Brady, and Martin Galvin have had and exercised control over The Irish People's finances. In its opposition, the government points out that Mr. Galvin remains an official of INAC, its National Director of Publicity. Defendant concedes that Galvin maintains this position but submits a statement by Galvin that when he

edits The Irish People he does not consider that he is, and he is not, acting for INAC. Defendant argues that these new facts undermine the court's decision of July 6, 1984 that The Irish People is controlled by INAC. In that opinion, the court relied on the signature power, and coincidence of directors between The Irish People and INAC. The court also relied on the subsidization through "advertising" of The Irish People by INAC. Defendant now argues that since the court found the advertising money objectionable only in conjunction with the coincidence of officers and financial control, see Memorandum Opinion of July 6, 1984 at 7, that the advertising factor is no longer sufficient to establish control. The court is not persuaded that these "new facts" should cause it to reconsider its earlier determination. As plaintiff points out, the fact remains that "Defendant is edited by the Irish Northern Aid Committee's National Director of Publicity, Martin Galvin, and that it continues to rely on the large financial subsidies from INAC for its survival." Plaintiff's Response to Defendant's Second Motion for Summary Judgment at 7. The court in its July 6, 1984 opinion also pointed to the fact that the two entities shared office space and a telephone number from February 23, 1975 to March 1, 1976. During that period The Irish People paid no rent to INAC. Correspondence signed by INAC officials describes The Irish People as "our weekly newspaper," Memorandum Opinion at 9, and a letter dated December 1, 1977 from INAC officials to the Boston Unit of INAC referred to the command of their sponsors in Ireland to keep the newspaper going. Id. The court will deny defendant's motion to reconsider its conclusions in its July Memorandum.

### B. Selective Prosecution

The Supreme Court has recently restated the familiar basis for a selective prosecution claim:

> [T]he decision to prosecute may not be " 'deliberately based upon an unjustifiable standard such as race, religion, or

other arbitrary classification' " ... including the exercise of protected statutory and constitutional rights....

*Wayte v. United States,* ——— U.S. ———, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). As the Court of Appeals for the Ninth Circuit has explained:

> In order to prevail in this allegation [of selective prosecution] appellant must bear the burden of proving at least a prima facie case. This requires that appellant first demonstrate that others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted. Secondly, appellant must show that his selection was based on an impermissible ground such as race, religion or his exercise of his first amendment right to free speech.

*United States v. Scott,* 521 F.2d 1188, 1195 (9th Cir.1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976) (involving alleged failure to file income tax forms).

### 1. Selection

In the section of Judge Wilkey's opinion in *Attorney General of the United States v. The Irish People, Inc.,* 684 F.2d 928 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983), that is the opinion of the court, the court explained that a "demonstration of selection is indispensable for the defense and ... the burden of so demonstrating lies squarely on the defendant." *Id.* at 946.[1] The court explained that selection requires the defendant to "demonstrate that others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted." *Id.* (quoting *United States v. Scott, supra* ). Defendant attempts to meet the selection prong by arguing that "other American individuals or groups who share at least the salient

characterics [sic] of the defendant so far as FARA is concerned, *apart from their disfavored political views,* are 'similarly situated,' and a proper measure of comparison for selective prosecution claims." Def. Mem. at 18 (emphasis in original). It claims that although Betty Williams and Mairead Corrigan, founders and leaders of the Community of the Peace People, another group involved in Northern Ireland, have registered under the Act, "these registrants filed wholly non-responsive registration statements, *yet none was apparently the subject of enforcement by the Attorney General.*" Def. Mem. at 16–17 (emphasis in original). But these groups have registered and thus are not similar to *The Irish People* which has never registered. Defendant further asserts that FARA has not been enforced against the Catholic Bishops in the United States, Jewish American groups with close ties to Israel, and pro-Solidarity Polish-Americans. In this case, the court does not decide whether the selection prong has been met. In order to succeed on a selective prosecution claim, the defendant must show *both* selection and improper motive. Because the court finds that defendant has not met the second prong, demonstrating improper motive, the court need not decide whether the selection prong has been met in this case.

### 2. Improper Motive

 If defendant can be found to have met the "selection" prong of the *prima facie* case for selective prosecution, it must then establish that the selection is "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification ... including the exercise of protected statutory and constitutional rights ...." *Wayte, supra,* 105 S.Ct. at 1531 (citations omitted). To be sure, "[t]he conscious exercise of some selectivity in

---

**1.** In one of this court's earlier opinions in this matter, *Attorney General of the United States v. The Irish People, Inc.,* 502 F.Supp. 63 (D.D.C. 1980), *rev'd,* 684 F.2d 928 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983), this court suggested that perhaps the *Scott* selection standard was not appropriate in a case such as this. 502 F.Supp. at 65. The court of appeals, however, squarely rejected this suggestion. 684 F.2d at 946–47.

prosecuting individuals for similar conduct *is* permissible." *United States v. Diggs,* 613 F.2d 988, 1003 (D.C.Cir.1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 838 (1980) (emphasis added) (citing *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962); *United States v. Bell,* 506 F.2d 207, 222 (D.C.Cir. 1974); *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974)). In the specific context of FARA, this circuit noted in *Attorney General* that the text of the Act and its legislative history "permit use of limited resources to target those alleged agents deemed most dangerous or powerful (*i.e.,* saboteurs, terrorists)." 684 F.2d at 956. What would be impermissible would be to use the power of prosecution "selectively to manage the information put before the American people in debates over foreign policy." *Id.* The circuit court continued:

> If the district court were to identify evidence which colorably shows that this newspaper was singled out for enforcement while those expressing views on the other side of the controversy were left alone and " 'the prosecution was undertaken with the motive to suppress' protected expression," ... the defendants would have made the requisite colorable showing of selective prosecution.[2]

*Id.* (citations omitted).

Defendant in this case faces the difficulty of distinguishing, as a practical matter, permissible reasons from impermissible ones.[3] Despite the potential difficulty of the task, the fact remains that the constitutionality of FARA as written is not in question on this motion, and that the burden

remains on the defendant to show that in this case the decision to prosecute was based on an impermissible motive.

On cross-motions for summary judgment, then, defendant necessarily argues either that as a matter of law plaintiff acted with an impermissible motive, or that a factual issue exists as to the purpose of the selection. Plaintiff necessarily argues that this court can decide as a matter of law that defendant has not shown that an issue of fact exists, which, if resolved in its favor, would meet the heavy burden of making a *prima facie* case of selective prosecution.

■ None of the facts asserted by defendant, however, adequately supports a conclusion that FARA was used in order to suppress constitutionally protected activity. Defendant claims not to have found a "smoking gun," but rather relies on "circumstantial" evidence to make its case. The facts relied on by defendant in its Statement of Material Facts under Local Rule 1–9(i), can be broken into four broad categories. The first category of facts cited by defendant consists of those facts that concern the involvement of allies in either making requests of this country, or receiving information from authorities in this country. *See* Facts # 10, 12, 14, 15, 17, 27, 31, 32. Defendant's second category of facts consists of representations concerning investigation of wholly legal activities. *See* Facts # 8, 11, 19, 20, 28. Defendant's third category of facts consists of those facts that broadly assert the State Department's interest in the use of FARA to solve the "Irish problem," and the State Depart-

---

**2.** Those on the other side have registered under the Act, thus the type of impropriety suggested here by Judge Wald cannot be said to exist in this case.

**3.** Thus, while Judge Wald speaks in *Attorney General* of the permissibility of targeting "those alleged agents deemed most dangerous or powerful," 684 F.2d at 956, Judge Wilkey points out that "the danger and power of an agent is definable only in political terms ...." *Id.* at 934–35 n. 20 (Wilkey, J., pt. II.A). The majority in

*Attorney General* expressed concern that in this case "issues of *constitutionally* improper motivation surface disturbingly." *Id.* at 956 (emphasis in original). Judge Wilkey, however, demonstrates persuasively that the very nature and purpose of the Act make it inevitable that the Justice Department will be called upon to make decisions to prosecute based on considerations which may result in "issues of constitutionally improper motivation surfac[ing] disturbingly."

ment's use of its powers to control entry into this country to speak on behalf of pro-IRA causes. *See* Facts # 15, 16, 17, 18, 22, 25, 26. Defendant's final category of facts consists of those facts which suggest internal FBI criticism of either methods used, or the conclusion that *The Irish People* is independent of INAC. *See* Facts # 9, 23, 29, 30.[4]

The court finds that the circumstantial evidence relied on by defendant does not produce a factual issue that precludes the awarding of summary judgment in favor of the plaintiff. Considering the facts relied on by defendant in their entirety, the court concludes that there is nothing to suggest that FARA was being used to suppress speech or constitutionally protected political activity. Many of the facts relied on show little more than the unremarkable conduct of foreign policy in connection with what were apparently perceived to be serious terrorist activities. Other facts, such as the alleged exclusion of speakers, have no bearing on the issue of whether the government sought to suppress this defendant's speech or political activity through the use of FARA. Still other facts, such as internal FBI conclusions and criticisms strike the court as wholly irrelevant to a determination that this current case is improperly motivated. The closest defendant comes to demonstrating a factual issue is when it purports to show the use of FARA to solve the "Irish problem", but there is no supporting evidence that the Irish problem was the speech of *The Irish People*, or its legitimate political fundraising. In fact, there is evidence that the Irish problem was the perception by some

of our allies that money was being raised in this country to support terrorism in Northern Ireland.

This latter point bears elaboration because much of defendant's case depends on it. Two documents on which defendant relies do mention the use of FARA to alleviate the Irish problem in the United States. *See* Serials 91 & 93.[5] *The Irish People* is mentioned in neither of these documents. Even accepting, however, that this FARA prosecution was brought in some measure to alleviate the Irish problem, these documents do not in the least suggest that the problem was the speech or legitimate political activity of the defendant. Serial 93, for example, which is described on its face as a memorandum from an F.S. Putnam to E.S. Miller, dated Sept. 26, 1973, refers to a meeting at which the FARA option was discussed. That memorandum states very clearly that the purpose of this meeting was to "review the responsibility of the various Government agencies regarding the investigation of *militant* Irish activities in the United States." (emphasis added). The other document, serial 91, is also a memorandum from F.S. Putnam to E.S. Miller, dated Sept. 17, 1973 which declared:

It is noted that the violence in Northern Ireland is mainly attributable to the Irish Republican Army (IRA), an illegal militant Roman Catholic organization which is divided into two wings, the Provisional Wing, which is directly involved in terrorist activities in Northern Ireland and the Official Wing, which is inclined toward revolutionary activities in line with the Marxist-Leninist ideology. The primary fund raising organization for the Provi-

---

4. Defendant states in its statement of facts not in dispute that an "FBI investigative memorandum found that '*The Irish People* is independent of the Irish Northern Aid Committee,' and noted that 'INAC does not approve of some of the articles in *The Irish People*,'" Fact # 29 (quoting serial 270). This statement mischaracterizes serial 270 in which the above quoted statements are identified as coming from a source who provided the above information. Thus, this serial does not support a view that this was the official FBI position.

5. Serials referred to are from FBI File 97–5299 and are collected in the Defendant's Notice of Filing dated April 22, 1985.

Although the point is not entirely clear, the defendant appears to characterize serials 91 and 93 as Justice Department memoranda. Whether that is so or not does not affect the court's decision that they do not hint at improper motive.

sionals in the U.S. is the INAC which has registered as its foreign principal the Northern Aid Committee (NAC) of Ireland.

Later in the same memorandum FARA and the Irish problem are referred to:

> The Irish situation has become a serious problem and source of embarrassment to the U.S. The State Department is continuing to receive pressure from the GOI and State is seeking assistance to alleviate the U.S. problem; however, it is apparent that State is not aware of the investigative responsibilities of the various U.S. agencies and has turned to the FBI for assistance in alleviating this problem. Our primary investigative effort in this regard is in connection with the [FARA], and we have no investigative jurisdiction with regard to the purchase of weapons and explosives or the use of mails for soliciting contributions. It is felt that the assistance being sought by State is a task not only for the FBI, but other investigative agencies such as Customs, Bureau of Alcohol, Tobacco & Firearms, INS, CIA, etc.

Finally, defendant relies strongly on serial 251, an "airtel" from the FBI Director to "SAC, New York and Legat, London" dated February 23, 1976:

> For the information of New York and Legat, London, FBIHQ representatives attended an inter-agency conference on 2/6/76 initiated by the Criminal Division of the Department. The purpose of this meeting was to determine what additional actions could be taken concerning alleged *gun-running and fund raising by the Irish Republican Army (IRA).*
>
> . . . .
>
> New York, in compliance with the Departmental request, should attempt to determine if members or officers of the Irish Northern Aid Committee headquartered at New York, are utilizing funds

raised in the U.S. for *illicit* purposes. New York should also attempt to determine any relationship between the Irish Northern Aid Committee and the Provisional IRA.

> In addition, New York should conduct the investigation requested by the Department concerning the newspaper, the *Irish People,* published at New York. The relationship between the *Irish People* and the Irish Northern Aid Committee is to be determined and the specific questions set out in the Department's letter of 1/26/76 should be answered.[6] (emphasis added).

An earlier memorandum from the FBI Director, similarly expressed concern over the possible relation between INAC, a registered agent, and *The Irish People.* See Serial 104.

It is difficult to see how these documents, the strongest ones for defendant's case, which express explicitly concern over U.S. dollars being raised in this country by a foreign terrorist organization raises an inference that FARA is being used in this case to suppress the speech of *The Irish People.* Defendant also argues that political fund raising is protected activity and thus the use of FARA to stem fundraising presents the illicit motive here. But defendant can point to no document or circumstances from which it can be inferred that the action to seek registration of this defendant was motivated by a desire to suppress legitimate political fundraising of *The Irish People.* Serial 251 refers to fundraising in this country by the IRA, not to legitimate political fundraising of this defendant. But the documents do refer to gun-running, illicit purposes, militant and terrorist activities.

## II. Conclusion.

■ Defendant seeks to paint this as a case in which the government is attempting

---

**6.** The questions here mentioned are not referred to or relied on by defendant in its memorandum or its statement of facts not in dispute.

"selectively to manage the information put before the American people in debates over foreign policy," *Attorney General, supra,* at 956, or alternatively as one in which this government seeks to cut off the flow of funds to support such speech. To be sure, these are legitimate concerns to which federal courts must be attuned. Yet defendant's entire argument ignores the fact that registration under FARA does not prevent the exercise of constitutional rights. If successful, the Justice Department's nine year attempt to have this defendant register under the Act results in registration and reporting under a constitutional statute—nothing more, nothing less. This is not to say that an attempt to use FARA to suppress speech, even though of dubious efficacy, could be tolerated. But the court here is concerned with what is being asked of this defendant in this case and the motives for that request. The defendant has attempted to paint a picture of unconstitutional dimensions with facts that tend to obscure the issue before the court because so many of those facts have so little to do with FARA or the defendant in this action. Those facts do not add up to support a finding that a factual issue exists as to whether the Justice Department was improperly motivated in seeking the registration of *The Irish People.*[7]

7. Defendant apparently attempts to raise a separate claim that "registration would violate the First Amendment because this action was instituted to harass and suppress Defendant's rights." Defendant's Reply Memorandum in Support of its Motion for Summary Judgment at 5. That claim fails for the same reason that the selective prosecution claim fails: no evidence of harassment based on constitutional rights.