**ATTORNEY GENERAL OF the UNITED STATES**

v.

**IRISH PEOPLE, INC., Appellant.**

No. 85–5883.

United States Court of Appeals, District of Columbia Circuit.

Argued April 24, 1986.

Decided July 25, 1986.

---

Charles S. Sims, New York City, with whom Mark H. Lynch and Susan Shaffer, Washington, D.C., were on brief, for appellant.

Brian K. Ahearn, Dept. of Justice, Washington, D.C., with whom Joseph E. Clarkson, Dept. of Justice, was on brief, for appellee.

Before BORK and SCALIA, Circuit Judges, and GESELL, District Judge.*

Opinion Per Curiam.

PER CURIAM:

The Irish People, Inc., which publishes a small weekly ethnic newspaper called *The Irish People,* appeals from an order of the District Court directing it to register as an agent of a foreign principal pursuant to the Foreign Agents Registration Act of 1938 (FARA), as amended, 22 U.S.C. §§ 611–621 (1982 & Supp.1984). In this enforcement action brought by the Attorney General seeking an injunction to compel registra-

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

tion, Irish People contended that it was not an agent of a foreign principal within the meaning of the FARA and raised selective prosecution as an affirmative defense. On cross-motions for summary judgment the District Court rejected the selective prosecution defense and granted summary judgment for the Attorney General. *Attorney General v. The Irish People, Inc.*, 595 F.Supp. 114 (D.D.C.1984), *and* 612 F.Supp. 647 (D.D.C.1985).[1] We affirm the District Court's disposition of the selective prosecution defense but find that disputed issues of material fact oblige us to reverse and remand for trial on the issue of whether Irish People is an agent of a foreign principal under the FARA.

The FARA requires agents of foreign principals to file a registration statement with the Attorney General, file and identify their political propaganda, and make their books and records available for official inspections. 22 U.S.C. §§ 612, 614, 615, 616; 28 C.F.R. §§ 5.1–5.801 (1985). The Act defines "agent of a foreign principal" as

any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction of control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person—

(i) engages within the United States in political activities for or in the interests of such foreign principal;

(ii) acts within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal;

(iii) within the United States solicits, collects, disburses, or dispenses contributions, loans, money or other things

of value for or in the interest of such foreign principal; or

(iv) within the United States represents the interests of such foreign principal before any agency or official of the Government of the United States....

22 U.S.C. § 611(c)(1).

The Attorney General claims that Irish People publishes as an agent of the Irish Northern Aid Committee (INAC), a group of Americans that raises funds for the Irish Republican movement and is the registered agent of the Irish Republican Army, a foreign principal. *See Attorney General v. Irish Northern Aid Committee*, 530 F.Supp. 241 (S.D.N.Y.1981), *aff'd*, 668 F.2d 159 (2d Cir.1982). To support this claim the Attorney General is required to prove two relationships: (1) that Irish People publishes its newspaper at the order, request or under the direction or control of INAC, for or in the interest of the IRA, and (2) that INAC's activities are directly or indirectly supervised, directed, controlled, financed or subsidized in whole or in major part by the IRA. In granting summary judgment for the Attorney General the District Court found that both these relationships had been established.

Irish People argues that the District Court erred and should have granted summary judgment for it and against the Attorney General because neither relationship was established by the facts presented by the government. In any event, Irish People argues, disputed issues of material fact concerning both relationships precluded summary judgment for the Attorney General. We consider whether summary judgment was appropriate based upon the facts presented concerning each relationship and then address Irish People's selective prosecution defense.

1. *The Relationship between Irish People and INAC.*

The Attorney General did not present any evidence that INAC had ever exercised

---

**1.** This case, initiated in 1976, was previously before this Court on issues related to the selective prosecution defense. *Attorney General v. The Irish People, Inc.*, 684 F.2d 928 (D.C.Cir. 1982), *cert. denied*, 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983).

any formal control over Irish People. Instead, he presented several undisputed events stretching back over the past ten years which the District Court found sufficient to establish that Irish People is currently acting at the request of INAC. First, it was undisputed that several of the officials or managing individuals of Irish People had also held official positions with INAC, including the editor of *The Irish People* who served as publicity chairman for INAC. Some of these individuals discontinued their role in Irish People during the pendency of the suit but the editor has maintained his position in both organizations. Second, Irish People received substantial financial support from INAC. From February, 1975 to March, 1976 the two organizations shared offices and telephones. Since that time, the Irish People has continued to receive substantial payments from INAC under an arrangement in which INAC pays the newspaper's operational budget. Third, there was a coincidence of editorial views of *The Irish People* and INAC.[2]

Irish People responded with affidavits from its officers and staff stating that the financial support was provided in exchange for advertising and that the sharing of office space in 1975–76 was done merely as a matter of accommodation. The editor and other American volunteer personnel declared that the paper operated independently in making editorial and reporting decisions; that INAC had never attempted to manage, direct or control the paper; and that, although the paper usually agreed with INAC's views, it had on several occasions published articles attacking INAC's actions or differing from its positions.

■ Although the District Court dismissed these affidavits as conclusory and lacking particularity, we find that they were adequate to raise a genuine issue of fact in light of the nature of the Attorney General's evidence and the issue involved. The undisputed facts offered to establish

that the newspaper acted at INAC's order or request were entirely circumstantial. No request, order, command, or directive was ever shown. There was no indication that Irish People had printed any articles at INAC's request or sought INAC's approval of its editorial views. Nor was there any proof that Irish People had ever taken any action because it had been urged, prodded or instructed to do so by INAC.

Instead, what was shown was substantial financial support and a convergence of viewpoints coupled with some overlap of personnel. It is well established that on a motion for summary judgment the opposing party must be accorded the benefit of all reasonable doubts when inferences must be drawn from the undisputed facts. *Goodrich v. International Brotherhood of Electrical Workers, AFL–CIO*, 712 F.2d 1488, 1494–95 (D.C.Cir.1983). Inferences must be construed in the light most favorable to the party opposing the motion and summary judgment should not be granted where the undisputed facts support contradictory inferences. *See Londrigan v. Federal Bureau of Investigation*, 670 F.2d 1164, 1171 n. 37 (D.C.Cir.1981); *National Association of Government Employees v. Campbell*, 593 F.2d 1023, 1027 (D.C.Cir. 1978). The affidavits presented by Irish People declared that the undisputed facts reflect two separate, independent organizations which share similar political views, attracted some of the same Irish activists and were financially related only through paid advertising without any control by INAC of the sort that would render the Irish People an agent of a foreign principal. Since this was a reasonable inference and explanation of the circumstances, Irish People was entitled to attempt to prove at trial that this was the correct conclusion to draw from these facts.

■ Moreover, affidavits denying a particular state of mind are often by their nature somewhat conclusory. Since motivation and intent issues are involved in

---

**2.** *See* 595 F.Supp. at 118–19; 612 F.Supp. at 649. The District Court found additional support for the Attorney General's position in correspon-

dence of INAC which strongly indicated INAC's commitment to keep the paper going. 595 F.Supp. at 119–20.

determining whether Irish People is acting independently or at the order, request, direction or control of INAC the affiants' denials were sufficient to create a triable issue of fact. Summary judgment is often inappropriate where state of mind is crucial to the ultimate factual issue. *See, e.g., Briggs v. Goodwin,* 698 F.2d 486, 491, *vacated on another issue on reh'g,* 712 F.2d 1444 (D.C.Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984); *Patrick v. LeFevre,* 745 F.2d 153, 159 (2d Cir.1984). In this case the officials and staff of the publication, all American citizens, strenuously emphasized that they acted independently of INAC and pointed to examples where they had opposed INAC. Given the nature of the issue, there is little more they could be expected to do to refute the Attorney General's circumstantial evidence. When, as here, circumstantial inferences of state of mind and motive are rebutted by denials supported by some particularized facts, the denials are enough to raise a factual issue necessitating trial.

We view Irish People's argument that First Amendment concerns require that the District Court apply a higher standard of "clear and convincing evidence" on summary judgment as inaccurate and unhelpful. Nonetheless, in determining whether any set of facts establishes that someone is acting as an agent for a foreign principal within the meaning of the Act it is important to consider the limitations on types of activity Congress intended to reach. Congress was particularly concerned that registration would not be imposed to stifle internal debate on political issues by citizens sympathetic to the views of foreigners but free from foreign direction or control. In amending the definition of agent in 1966 Congress emphasized that the Act should not require the registration "of persons who are not, in fact, agents of foreign principals but whose acts may incidentally be of benefit to foreign interests, even though such acts are part of the normal course of those persons' own rights of free speech, petition or assembly." H.R.Rep.

No. 1470, 89th Cong.2d Sess. 5–6 (1966), *reprented in* 1966 U.S. Code Cong. & Ad. News. 2397, 2401. Moreover, "mere receipt of a bona fide subsidy not subjecting the recipient to the direction or control of the donor does not require the recipient of the subsidy to register as an agent of the donor." *Id.; see also* S.Rep. No. 143, 89th Cong. 1st Sess. 6–8 (1965); *Michele Amoruso E. Figli v. Fisheries Development Corporation,* 499 F.Supp. 1074, 1081–82 (S.D.N.Y.1980) (corporation which receives financial support from foreign principal without being subject to its control and whose lobbying efforts benefit a foreign government but are not subject to the foreign government's control is not an agent under FARA). Consequently, the declarations that despite INAC's financial support and similar political views Irish People acts independently require that the issue proceed to trial so that the facts can be fully ventilated and the validity of these declarations discerned.

### 2. The Relationship between INAC and the IRA.

The District Court concluded INAC acts as an intermediary between Irish People and the IRA, requesting Irish People to act on behalf of or in the interests of the IRA. To establish this relationship the District Court relied solely on the fact that INAC is a registered agent of the IRA.[3] Irish People argues that the fact that INAC is the registered agent of the IRA is not enough to establish that INAC is an intermediary for the IRA in the manner defined by the statute and there was no other proof offered on this issue.

Resolving this issue requires consideration of the slightly different language used by the statute to define when one is deemed the agent of a foreign principal or intermediary, and when one is deemed the intermediary of a foreign principal. Any person who acts "at the order, request, or under the direction or control of a foreign principal" or its intermediary may be an agent, but an intermediary is a person

---

**3.** 595 F.Supp. at 116.

"whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal." 22 U.S.C. § 611(c)(1). Thus, although a registered agent under the FARA will often also qualify as an intermediary for the foreign principal, this is not always or necessarily the case.

■ Under the circumstances the fact that INAC was registered was not enough to establish that INAC was acting as an intermediary because INAC was compelled to register as the IRA's agent on the deliberately narrow ground that it acted as "representative" for, or at the "request" of the IRA. *Attorney General v. Irish Northern Aid Committee*, 530 F.Supp. 241, 256–60 (S.D.N.Y.1981), *aff'd*, 668 F.2d 159, 161 (2d Cir.1982). In compelling INAC to register both the district court and the Second Circuit Court of Appeals emphasized that it was not necessary to make a finding that INAC was the IRA's agent in the traditional sense set forth in the Restatement (Second) of Agency requiring proof of control. Someone who merely responds to a "request" of a foreign principal is not an intermediary under the standards set forth in the FARA. Consequently, the fact that INAC has been compelled to register because it was found to have acted at the IRA's request alone is not sufficient to establish that it is an intermediary for the IRA.

■ Nonetheless, we believe it would be inappropriate to grant summary judgment to Irish People based on this point. In addition to the fact of registration, the record before the District Court contained numerous exhibits from INAC's files and information concerning its activities which at least raise an issue of fact as to whether INAC acts as an intermediary of the IRA, using Irish People as its agent. Consequently, we remand this issue for trial as well.

3. *Selective Prosecution.*

■ This Court has previously set forth the standard to be applied where selective prosecution is advanced as a defense to a FARA enforcement action:

> If the district court were to identify evidence which colorably shows that this newspaper was singled out for enforcement while those expressing views on the other side of the controversy were left alone and "'the prosecution was undertaken with the motive to suppress' protected expression,". Mem.Op. at 4, J.A. at 115 (quoting *United States v. Peskin*, 527 F.2d 71, 86 (7th Cir.1975) (en banc)), the defendants would have made the requisite colorable showing of selective prosecution.

*Attorney General v. The Irish People*, 684 F.2d at 956. Thus, defendant has the burden of demonstrating both that it was selected out for prosecution and that the prosecution was improperly motivated by a desire to suppress its speech.

In rejecting Irish People's defense the District Court indicated some doubt as to whether Irish People could show selection, but found it unnecessary to decide this issue because it found that the circumstantial evidence relied on by Irish People to establish improper motive did not raise any factual issues and did not meet Irish People's burden to establish this second element. Although the proof was not unequivocal, we share the District Court's view that Irish People's showing on this element was not adequate to preclude summary judgment for the Attorney General.

The District Court noted that documents from the government's file explicitly expressed concern over gunrunning, terrorist activities and fund raising by agents of the Irish Republic Army and indicated that at the urging of some of our allies the government proposed using the FARA to alleviate this "Irish problem".[4] This effort led to an investigation of the INAC and its fund raising efforts, FARA enforcement actions against INAC and its agents, and eventually to the investigation of Irish People that resulted in this lawsuit. The District Court

4. 612 F.Supp. at 652–53.

acknowledged that it is possible to infer from the documents that the government's motive was, in part, to use the FARA to stem fund raising efforts by INAC for the IRA's activities, but rejected defendant's claim because, given the origins of the investigation, it could not infer that there was a desire to suppress the legitimate fund raising of Irish People, as opposed to a desire to inquire more generally into its activities.

 In deciding that the Attorney General should have been granted summary judgment on this issue we note that the enforcement of the FARA for the purposes expressed in the statute does not infringe the exercise of constitutional rights. The documents presented by defendant demonstrate that the government was motivated by a desire to carry out the purposes of the FARA by identifying the agents of foreign principals and insuring that the people of the United States may appraise their statements in light of their source. Given the heavy burden that the defense of selective prosecution imposes on the right of Irish People to question whether a government inquiry was initiated for improper purposes and the paucity of proof of improper motive as well as the paucity of proof that others have been treated differently, the District Court's decision to reject Irish People's selective prosecution defense must be sustained.

Accordingly, the decision of the District Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

*It Is So Ordered.*